JONES *v.* TRAVERS.

Opinion delivered January 4, 1915.

1. VOLUNTARY CONVEYANCES—UNDUE INFLUENCE—MENTAL WEAKNESS.—If a person, although not positively *non compos*, or insane, is yet of such great weakness of mind, as to be unable to guard himself against imposition, or is unable to resist importunity or undue influence, a contract made by him under such circumstances, will be set aside; and it is not material from what cause such weakness arises.

2. VOLUNTARY CONVEYANCES—UNDUE INFLUENCE—MENTAL WEAKNESS—CANCELLATION.—When deceased, an elderly woman, executed a deed to valuable property to defendant, without a valuable consideration; *held*, the evidence warranted a finding by the chancellor, that the conveyance was not her deliberate act, nor free from fraud on defendant's part, and a decree cancelling the deed will be affirmed.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*W. N. Carpenter, Bratton & Fraser,* and *Harry H. Myers,* for appellant.

1. The burden was on the appellees to prove their allegations. 6 Cyc. 334-5, 367. Executed contracts are not cancelled except where the proof is clear and convincing, and never for fraud unless fraud is clearly shown. *Ib.* Old age, failing health and loss of memory, etc., are not alone sufficient to prove incapacity to make a will. 1 Redfield on Wills 249. Whoever alleges mental incapacity must prove it. 25 N. Y. (11 Smith) 9. Undue influence *must be proved;* it is never inferred from the relationship of the parties. 7 Jones Law, N. C. 412.

2. To set aside a deed the proof must show imposition, fraud or undue influence, with weakness of mind, etc. 27 Ark. 166. See also 97 Ark. 450; 73 *Id.* 170.

3. Appellant has a clear preponderance of testimony in his favor. The findings of a chancellor are only persuasive. 31 Ark. 85; 41 *Id.* 292; 42 *Id.* 521; 15 *Id.* 209; 23 *Id.* 341. When clearly erroneous this court does not hesitate to reverse. 50 Ark. 185; 55 *Id.* 112; 43 *Id.* 307.

*O. M. Young* and *John L. Ingram,* for appellees.

The evidence shows the deeds were procured by fraud and the exercise of undue influence and without consideration. Appellant abused the confidential relationship of physician and patient. Mrs. Stewart was old, feeble and in poor health, and went to appellant and never escaped from his clutches. The finding of the chancellor is amply sustained by the evidence.

McCULLOCH, C. J. Elizabeth Stewart, a childless widow, died in Arkansas County, in this State, where she resided, on January 4, 1913, and this is an action instituted by her collateral heirs in the chancery court of that county to set aside a deed executed by her to the defendant, Jones, a short time before her death.

Mrs. Stewart was 72 years of age at the time of her death and had resided in Illinois all of her life until about three years before her death, when she purchased the lands in controversy, which are situated in Arkansas County, and removed to that locality to reside. She owned

considerable property at Shipman, Illinois, but disposed of a portion of it about the time she purchased the lands in Arkansas. She was a thrifty, business woman of more than ordinary intelligence, energy and business sagacity until her health became poor shortly before she removed to Arkansas. It is claimed that her mental capacity then became such that she was not capable of executing a conveyance.

The defendant was a physician in Alton, Illinois, when Mrs. Stewart went to that place for treatment. She boarded at the home of an acquaintance and was treated by the defendant and other physicians. The testimony tends to show that defendant was favored by her above other physicians, and the testimony adduced by the plaintiffs tends to show that soon after the two became acquainted he acquired a profound influence over her. She went back to Shipman with her brother, but shortly thereafter she and the defendant came to Arkansas together and from then until the time of her death they occupied a home together on the land in controversy. Defendant had been married, but was divorced from his wife, and he also brought with him to Arkansas a young woman who had been his housekeeper in Alton, and who resided with him and Mrs. Stewart until the latter died.

The lands in controversy consist of 190 acres, which the testimony tends to show are of the aggregate value of ten or twelve thousand dollars. There was a mortgage on the lands for four thousand dollars. The conveyance executed by Mrs. Stewart to the defendant bears date of August 6, 1912, and recites a consideration of the sum of "$1.00 paid and other good and valuable considerations." The deed was not placed of record by the defendant until four days after the death of Mrs. Stewart. According to the testimony of the defendant himself, Mrs. Stewart's health became poor during the summer or early part of the fall of 1912, and she was treated for chronic malaria. Three or four days before her death she was coming down the stairs, and as she reached the bottom of the stairs a misstep caused her to fall against

a door and injure her head. She was confined to her bed and a few days thereafter sustained a stroke of paralysis and became unconscious and died in that condition. A post-mortem disclosed the fact that her skull was fractured. The evidence adduced by the plaintiffs tends to show that while Mrs. Stewart was formerly a woman of strong and active mind, when her health became poor, about the time she went to Alton for treatment, she became mentally weak and easily influenced and seemed to be under the influence of the defendant. It appears, however, that this was her first acquaintance with the defendant.

Many witnesses were introduced who had known Mrs. Stewart for a lifetime and their testimony is sufficient to establish the fact that she was not of sufficient mental capacity to intelligently manage her business— at least, that she was easily influenced, and when subjected to the influence of others that she was not of sufficient mental capacity to resist such influences. The testimony adduced by the defendant, on the other hand, tends to show that Mrs. Stewart's mental capacity and her activity of mind continued unabated up to the time of her death. If the testimony is measured by numerical strength, it perhaps preponderates in favor of the defendant as to the mental capacity of Mrs. Stewart, but, the witnesses adduced by the defendant were persons who, in the main, had merely a casual acquaintance with Mrs. Stewart, while those who testified on behalf of the plaintiffs were in better position to judge of her mental capacity. The chancellor found in favor of the plaintiffs and cancelled the conveyance, and we are unable to discover from the record that the testimony on the issues involved preponderates against his finding.

The defendant does not attempt to give any reason why Mrs. Stewart conveyed to him this valuable tract of land. He states in general terms that he became interested with her in the lands purchased in Arkansas, but he does not say what interest that was and in what way be became interested. The lands were purchased in

her own name and he doesn't say that he furnished any
of the consideration. He states that the consideration of
$1.00 and other valuable considerations expressed in the
deed correctly represented the consideration, but he does
not undertake to show that there was in fact any other
consideration except the $1.00 recited. We must assume,
therefore, from this condition of the record that the deed
was executed without any valuable consideration what-
ever, and if it be sustained at all it must be upon the
theory that it was a gift. When the testimony in the
record is carefully weighed, in the light of common ex-
perience, the conclusion is irresistible that the defendant
exercised some peculiar influence over Mrs. Stewart
which induced her to execute this conveyance conveying
to him the valuable property in controversy without any
consideration whatever. He employed an attorney to pre-
pare this deed and there was nothing in the record to
show that Mrs. Stewart initiated the plan of conveying
the property to him, and nothing to show that it was her
desire to do so. The officer who took the acknowledg-
ment was not called to testify, nor was any one else
called who was present when the deed was executed.

(1) In *Kelly's Heirs* v. *McGuire,* 15 Ark. 555, the
court said: "If a person, although not positively *non
compos,* or insane, is yet of such great weakness of mind,
as to be unable to guard himself against imposition, or
to resist importunity or undue influence, a contract made
by him under such circumstances, will be set aside. And
it is not material from what cause such weakness arises.
It may be from temporary illness, general mental imbe-
cility, the natural incapacity of early infancy, the infirm-
ity of extreme old age, or those accidental depressions
which result from sudden fear, constitutional despond-
ency, or overwhelming calamities. And although there
is no direct proof that a man is *non compos,* or delirious,
yet, if he is of weak understanding, and is harassed and
uneasy at the time; or if the deed is executed by him *in
extremis,* or, when he is a paralytic, it can not be sup-
posed that he had a mind adequate to the business which

he was about; and he might be very easily imposed upon.''

(2) · When the facts of this case are measured by the standard thus announced, we are of the opinion that the conveyance of Mrs. Stewart to the defendant was not executed for a valuable consideration, and was not her deliberate act, free from fraud or undue influence. In fact, there is nothing in the record to sustain the conveyance except the bare fact of its execution. It is not fortified by any other fact which would tend to form a reasonable basis for it.

The conclusion of the chancellor will not be disturbed, and the decree is therefore affirmed.