## NELSON *v.* MURRAY.

### Opinion delivered October 4, 1920.

1. EVIDENCE—JUDICIAL NOTICE—MATTER OF COMMON KNOWLEDGE.— It is a matter of common knowledge that in old age the mind more readily succumbs to disease than in youth or middle age.

2. DEEDS—MENTAL INCAPACITY.—Evidence *held* to justify the chancellor's finding that an aged colored woman, who shortly prior to her death, executed a deed to defendant, was mentally incapable.

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A chancellor's finding of facts will not be set aside on appeal where it is not against the preponderance of the testimony.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

#### STATEMENT OF FACTS.

Appellees brought this suit in equity against appellant to cancel and set aside a deed to her from Katie Henry on account of the mental incapacity of the grantor.

Katie Henry was an old colored woman, sixty-eight years of age, who lived in the city of Little Rock, and owned a house and lot in North Little Rock which she

had rented for some years to Beatrice Nelson. For nine years or more she had resided with Elijah Murray and his family in the city of Little Rock. She did various kinds of work until August, 1919, at which time she was taken sick. She continued to stay at the Murray home until about the first week in December, 1919. At that time Beatrice Nelson and some of her friends came to the Murray home and carried Katie Henry to her home in North Little Rock, where she resided until her death on January 15, 1920. On December 11, 1919, Katie Henry executed a deed to Beatrice Nelson to the house and lot in controversy. Katie Henry was sick in bed at the time and was unable to write her name and on that account signed the deed by her mark. The consideration recited in the deed was one dollar.

Elijah Murray, his wife and grown daughter were all witnesses in the case. According to their testimony, Katie Henry had lived with them for nine years, and they had never charged her any board while she lived there. They cared for her after she became ill in August, 1919. About the first part of December the husband of Beatrice Nelson came to see Katie Henry and talked with her privately for some time. On the next day Beatrice Nelson and two other colored women came to their house and carried Katie Henry away in an automobile. Katie Henry was carried to the home of Beatrice Nelson on the 8th day of December, 1919, and stayed there until she died on the 15th day of January, 1920. During the first part of December, 1919, Elijah Murray told W. E. Gay, a lawyer, that Katie Henry wanted him to make a will for her, and Gay went to Murray's house for that purpose.

Gay testified that he had known Katie Henry for about four years and walked in and took her hand. He told her that he had been informed that she wanted him to write a will for her and that he had come there for that purpose. Katie Henry just nodded her head and did not say anything. Gay stayed there for twenty or thirty minutes, and Katie Henry seemed so nervous that

he decided that she was not mentally capable of making a will and went away without writing it.

Dr. E. Meek, who has practiced medicine in Arkansas for more than forty years, and who had known Katie Henry for thirty-five or forty years, was called to see her about the 15th day of December, 1919. Katie Henry had been his housekeeper at one time, and he had often prescribed for her. They were old friends, and he had never made any charges for his professional services to her. He stated that Katie told him on his last visit that her time to die had come and that medicine would not do her any good. He said that she hardly knew what she was saying and was in a kind of comatose state; that he was not there more than ten or fifteen minutes and never saw her afterward; that he knew she was not mentally capable of executing a deed while he was there and did not think at that period of time that she was mentally capable of understanding and appreciating her act in the execution of a deed.

Several women testified in behalf of the defendant. Neither the defendant nor her husband were witnesses in the case. The defendant's witnesses in a general way testified that they had known Katie Henry for several years intimately and visited her frequently after she was carried to Beatrice Nelson's house in December, 1919, and that her mind at this time was perfectly clear and that she understood what she was doing at the time she executed the deed in question. Her pastor stated that she spoke to him of the affection she had for Beatrice Nelson and her husband, calling them her dear children.

Dr. P. Christensen testified that he was called to see Katie Henry during the first part of December, 1919, at Beatrice Nelson's house; that she answered intelligently every question he asked her about her condition; that he was there about twenty minutes, and that he decided that she could only live two or three months.

The lawyer who wrote the deed in question testified that he was asked to write it by Ella Butler, a friend of Katie Henry; that Ella told him that Katie was sick

and asked him to come to the Nelson home and take her acknowledgment; that he was a notary public, and agreed to do this; that he found Katie sick in bed and unable to sit up and sign the deed; that she signed the deed by mark and that he told her what the deed contained and was thoroughly convinced that she understood what she was doing and that he stayed in the room where she was fifteen or twenty minutes fixing the papers.

The chancellor found that Katie Henry was mentally incapable of executing the deed and entered a decree annulling and setting aside the deed from Katie Henry to Beatrice Nelson. The case is here on appeal. Other facts will be stated or referred to in the opinion.

*O. D. Longstreth,* for appellant.

The court erred in finding that Katie Henry was mentally incapable of executing the deed and in setting it aside. The greater number of witnesses testified that Katie Henry was mentally competent at the time she executed the deed, and the lawyer who wrote the deed and took Katie Henry's acknowledgment testified that she understood the nature of the transaction and was capable of executing the deed. The evidence does not show that Beatrice Nelson had any influence over Katie Henry and the mental condition of deceased when she signed the deed was good; that she was rational and knew what she was doing, and no undue influence was used, and a valuable consideration was shown. The proof of mental capacity was ample, and the law is well settled. 100 Ark. 565; 119 *Id.* 466; 4 Elliott on Contracts, par. 3820, pp. 1026, 1033. There was no undue influence used. 96 Ark. 265; 119 *Id.* 466-9; 44 W. Va. 612; 67 Am. St. Rep. 788; 172 S. W. 828. The presumption is in favor of the sanity and competency of the grantor in a deed, and old age merely does not affect the competency of the grantor in the deed. A deed is not invalid because the grantor's mind at the time he made it was impaired or because he was sick or in ill health; it is not necessary that the grantor be capable of transacting business in the *ordi-*

*nary way.* 8 R. C. L., pp. 944-5, §§ 20, 21; 115 Ark. 430; 123 *Id.* 166. The burden was on appellees to show mental incapacity of the grantor. 218 S. W. 842; 8 R. C. L., p. 945, par. 21; 70 Ark. 166. The undue influence must be the malign influence which results from fear, coercion or other cause depriving the grantor of free agency in the disposition of his property. 78 Ark. 420; 49 *Id.* 367, 371. The testimony wholly failed to show that appellant exercised or attempted to exercise any undue influence over the grantor. The presumption is in favor of sanity and the burden was on the plaintiff to show mental incapacity by evidence clear, strong and conclusive. Such is not the case here.

*W. E. Gay* and *Reid, Burrow & McDonnell,* for appellees.

The burden of proof in cases of mental weakness or incapacity is upon the parties claiming the benefit of the conveyance. 86 Ark. 460; 2 Pom. Eq. (4 ed.), pp. 2016-17; 123 Ark. 134, 184 S. W. 838. This case falls within 15 Ark. 556-603. If the burden was on plaintiffs they sustained it. The chancellor so found. A parallel case is 116 Ark. 95; 172 S. W. 828. See, also, 84 Ark. 400; 106 S. W. 955. The rule is also adhered to in 123 Ark. 166; 101 *Id.* 611; 115 *Id.* 430. All the circumstances surrounding the transaction show or point to undue influence; the evidence clearly preponderates in favor of the chancellor's finding.

HART, J. (after stating the facts). The deed is sought to be set aside solely on the ground of the mental incapacity of the grantor, and the only issue raised by the appeal is whether or not Katie Henry was capable of understanding the nature and effect of her act in signing the deed on the 11th day of December, 1919, whereby she conveyed the house and lot in controversy to Beatrice Nelson.

Counsel for appellant contend for a reversal of the decree on the ground that the greater number of witnesses in the case testified that Katie Henry was men-

tally competent at the time she executed the deed in question, and on the further ground that Mr. Paine, a reputable white lawyer, who wrote the deed and took Katie Henry's acknowledgment thereto, testified that he was thoroughly convinced that she understood the nature of the transaction and was capable of executing the deed.

We can not agree with counsel in their contention. It is true Mr. Paine knew Katie Henry and testified that he was thoroughly convinced that she understood what she was doing when she executed the deed, but he had no occasion to make more than a casual examination of her mental condition. Ella Butler had procured him to write the deed, and he went to the Nelson home to take Katie Henry's acknowledgment to it because he was informed that she was sick. He found her in bed and so weakened by disease that she could not sit up and write her name. He explained the deed to her, and she signed it by making her mark. A physician who testified in the case for the defendant said that when he examined Katie Henry during the first part of December, 1919, he knew that she could not live longer than two or three months. Katie Henry herself realized that her end was near at hand. Doctor Meek, whom she had known for thirty-five years and who had frequently prescribed for her without charging her any fee and in whom she had great confidence, was called to see her about the 15th day of December, 1919. Katie Henry told him that she was going to die, and that medicine would not do her any good. Doctor Meek was positive that she was not mentally capable of executing a deed on that day and said that he did not think she was capable of executing a deed about this time. The deed in question had been executed on the 11th day of December, 1919. Katie Henry had only been in the Nelson home for a few days. They were not related to her and had never done anything for her. She had lived with the Murrays for the previous nine years and had always got along well with them. The house and lot in controversy was the only property she owned. Her mind was greatly weakened by old age and disease at the time

she executed the deed.   Neither Beatrice Nelson nor her
husband were witnesses in the case.   No explanation is
offered by them for the execution of the deed.   The con-
sideration recited in the deed was one dollar.   It is true
that one of the witnesses said that the Nelsons were go-
ing to take care of Katie Henry during the rest of her
life.   The Murrays were doing this without charge to her,
and there seems to have been no good reason for taking
her away from their home unless they wished to do what
they did do; that is, induce her to execute to them a deed
to the house and lot where they resided, and which was
all the property that Katie Henry owned.

An eminent psychologist has said that in old age,
the mind often turns back upon itself like a bird bewil-
dered in a stormy sky.   In referring to the fact of men-
tal weakness caused by old age, another philosopher has
said: "Here we see the circle of life closing in upon
itself, ending where it began."   It is a matter of common
knowledge that in old age the mind more readily suc-
cumbs to disease than in youth or middle age.

No provision is made in the deed for the maintenance
of Katie Henry.   Neither Beatrice Nelson nor her hus-
band testified that a part of the consideration for the
deed was that they should take care of Katie Henry dur-
ing her lifetime and provide her with a decent burial.
We do not deem it necessary to refer more in detail to
the particular situation and mental condition of Katie
Henry.   The peculiar circumstances under which the
Nelsons removed her from the home where she had been
staying for more than nine years and the fact that a rep-
utable physician who had known her for many years and
who had frequently prescribed for her testified that she
was mentally incapable of executing a deed at the period
of time at which she executed the deed in question, taken
in connection with the evidence of the Murrays and the
surrounding facts and circumstances, caused the chancel-
lor to find that the whole substance of the transaction
showed a want of mental capacity in Katie Henry at the
time she executed the deed and that a court of equity

should not sustain it.   It can not be said that the finding of the chancellor is against the weight of the testimony, and under our settled rules of practice the finding of a chancellor will not be disturbed on appeal where it can not be said that it is against the preponderance of the evidence.   For illustrative cases of the kind under consideration, see *McEvoy* v. *Tucker,* 115 Ark. 430, and *Jones* v. *Travers,* 116 Ark. 95.

It follows that the decree will be affirmed.