EDWARDS *v.* LOCKE.

Opinion delivered April 29, 1918.

1. CANCELLATION OF INSTRUMENTS—DEED—FAILURE OF CONSIDERATION—AGREEMENT TO SUPPORT—A. deeded land to B. in consideration of B.s promise to support A. during her natural life. *Held,* when B. failed to perform his contract that A. was entitled to have her deed to B. canceled. The rule that in an action to cancel an instrument the plaintiff must tender back the consideration received, has no application here, because A. had received no consideration from B. for her deed.

2. CANCELLATION OF DEEDS—AGREEMENT TO SUPPORT—FAILURE OF CONSIDERATION.—Where a grantor conveys land in consideration of the grantee's agreement to support, maintain and care for the grantor during the remainder of his or her natural life, and the grantee fails or refuses to comply with the agreement, the grantor may in equity have a decree rescinding the contract, setting aside the deed, and revesting the grantor with title.

3. CANCELLATION OF DEEDS—AGREEMENT TO SUPPORT.—An intentional failure upon the part of the grantee to perform the contract of support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of

the contract, and, therefore, vitiates the deed based upon such consideration.

4.   CANCELLATION OF DEEDS—LACHES.—Under the facts set forth in the preceding paragraphs, the doctrine of laches has no application, where the grantor waited several years after the grantee refused to comply with the contract, before bringing an action to rescind the contract.

Appeal from Sharp Chancery Court, Southern District; *George T. Humphries,* Chancellor; affirmed.

*Sullivan & Chesnut, H. A. Northcutt* and *T. I. Hernn,* for appellant.

1.   The court erred in overruling the demurrer to the complaint. No tender of compensation for betterments was made, nor offer to restore benefits. 4 R. C. L. 509-10-11-12-13-14, etc.

2.   Appellee is barred by laches and estopped by her conduct. Ann. Cases, 1913 E. Vol. 30, pages 436-7-8-9; 9 C. J. 1201, § 82; 4 R. C. L. 514, § 26.

3.   No fraud, duress or undue influence is shown. The deed was in compensation for services rendered and to be rendered. 128 Ark. 143. There was no failure of consideration. 129 Ark. 374.

4.   Appellant proved his willingness and ability to continue to support. 67 Ark. 526.

5.   The findings of the court are against the preponderance of the testimony.

*David L. King,* for appellee.

1.   No tender of benefits or betterments was necessary. Appellant received personal property and rents, etc., far in excess of any betterments and benefits to appellee.

2.   Drunkenness and conduct such as to render appellee's condition intolerable was proven. No laches or estoppel were shown. But fraud and undue influence were proven. The deed was properly rescinded. 35 Ark. 483; 38 *Id.* 428; 40 *Id.* 28; 26 *Id.* 604; 37 *Id.* 145; 33 *Id.* 425, etc.

### STATEMENT OF FACTS.

John H. Locke was the owner of certain lands, in Sharp County, which he occupied as his homestead. In March, 1904, for an express consideration of $1,000 he executed a warranty deed conveying the lands to his daughter, Elizabeth Locke. Sarah Locke, his wife, and the mother of Elizabeth, joined in the conveyance releasing and relinquishing her rights of dower and homestead. The daughter lived with her mother and father. Her father died in July, 1908, and her mother in January, 1914. At the time of the death of John Locke, Ira Edwards, a grandson, lived with him and continued thereafter to reside with his grandmother and aunt. September 20, 1909, Elizabeth Locke executed her warranty deed to Ira Edwards for the lands, which had been conveyed to her by her father, containing in all three hundred acres more or less. The consideration named in the deed was $10 cash in hand and the further consideration that Edwards had supported and cared for Elizabeth Locke and her mother for the past six years, and had entered into an obligation to continue such support for the remaining years of their lives and for the love and affection that she had for her nephew. On the same day Edwards entered into a written contract with Elizabeth Locke duly acknowledged and signed by both in which Edwards agreed, for and in consideration of the conveyance to him of the lands of Elizabeth Locke, described in the deeds on the same date, to obligate himself to care for, maintain and support his aunt Elizabeth Locke and his grandmother Sarah Locke for and during their natural lives, and she obligated herself to execute the deed, which she did as above stated.

On the 12th of October, 1912, Edwards and Elizabeth Locke executed a deed of trust, on the lands mentioned, to W. A. Edwards, trustee, for the purpose of securing Clay Sloan for a loan of $700.00. On the 19th of November the appellee filed this suit in the Sharp chancery court against Edwards and Sloan in which she

alleged that she was the owner of the lands described in her complaint; and also that she was the owner of certain personal property which her father had sold and devised to her, which she also described. She set up and exhibited a deed from her father as her source of title to the lands. She alleged that she was illiterate; that she did not understand the contents of the deed she had executed to appellant, copy of which was exhibited; that appellant had taken charge of the lands and personal property belonging to her and had had the entire control and management of the same since the death of her father, using the rents and profits therefrom as his own; that appellant had sold forty acres of the land against her will, and had mortgaged the land to Clay Sloan for $700; that she did not sign or acknowledge the deed of trust to Clay Sloan. Appellee also set up that soon after appellant took charge of the property he began to squander the same in a reckless manner and that he neglected appellee and her mother and by his dissipation and abuse subjected them to great indignities and humiliations, and that after the death of her mother his conduct towards appellee continued and became intolerable, compelling her at last to leave her home and seek protection among relatives. Appellee alleged that the deed to appellant was executed through fraud, misrepresentations, false pretense, intimidation, and duress; that the consideration for the deed and contract which she entered into with appellant had wholly failed. She prayed for a cancellation of the deed and contract and that the mortgage to Sloan be declared fraudulent and same be canceled and that she have a decree for the personal property.

Appellant Edwards filed a general demurrer to the complaint and also answered admitting that appellee's father had conveyed to her the lands in controversy, and the execution of the deed from the appellee to him and to his contract with her. He admitted that he sold a forty acre tract of land and the execution of the deed of trust

to Sloan; and denied all the other material allegations of the complaint and set up that in 1904 he entered into a verbal contract with his grandfather, by the terms of which the grandfather gave appellant all his personal property in order to induce appellant to take charge of his grandfather's farm and other business and to take care of him and his wife and the appellee. And alleged that he performed his contract by supporting his grandparents until their death, and that since the execution of the deed made by the appellee to appellant the latter had complied with his part of the contract; that he was still willing and able to continue to carry out his part of the contract; that the deed by appellee to him was made upon the consideration of ten dollars therein named and that he take care of appellee and her mother. Appellant further alleged that he and appellee lived together until 1915 at which time appellee took a notion to marry one Murphy and from that time until she left home she became disagreeable and wanted the land back. He denied categorically all charges of fraud in the procuring of the deed and all charges of personal misconduct towards and abuse of the appellee and also pleaded ratification, laches, and estoppel. He alleged in detail the character of the improvements made by him and their value. Appellant prayed to be discharged with his costs, and that, if the lands should be adjudged to belong to the appellee, he have a decree for the improvements and have the expenses incurred by him in taking care of and supporting the appellee and her mother and father, and that the same be declared a lien upon the lands in controversy.

Clay Sloan filed a separate answer, alleging the execution by the appellant and the appellee of the deed of trust mentioned in the complaint to secure a loan made by him to them for $700. He alleged that the appellee signed and acknowledged the mortgage with the full understanding of the terms and conditions therein; that he made the loan and took the mortgage in all good faith without knowledge of any possibility of litigation be-

tween the appellant and the appellee as to the title of the property. He prayed that the mortgage be declared a valid lien upon the lands described therein, regardless of the result of the suit between the appellant and the appellee; and that he recover all his costs.

The cause was heard upon the pleas, exhibits, certain documentary evidence, and the depositions of witnesses. The court found that the contract and the deed of conveyance between the appellant and the appellee mentioned in the pleadings were executed on the same day, and should be taken together and construed as one instrument and contract. The court also found that the deed of trust was executed and was security for a loan from Sloan to appellant; that as between the appellee and the appellant the debt was that of appellant but that as to Sloan it was the debt of both of them and constituted a valid lien on the property described therein; that the personal property involved was the property of the appellant. The court further found that Edwards had failed to carry out his contract to support and maintain the appellee, and by his conduct towards her he had rendered her condition intolerable, and that the consideration for the deed and contract had failed; that appellant had practiced fraud and deceit upon the appellee in the procuring of the deed and contract; that the rents and profits which the appellant had received from the lands in controversy were sufficient to pay him for the improvements which he had placed upon the land; and that therefore he was not entitled to any betterments.

The court entered a decree in accordance with its findings, canceling the contract and deed, and quieting the title in the appellee to the lands; and entered decree in favor of Sloan dismissing appellee's complaint as to him for want of equity. The court also dismissed appellant's cross-complaint for improvements and entered a decree in favor of the appellee against the appellant for the costs.

WOOD, J., (after stating the facts). (1)   Appellant contends that the demurrer to the complaint should have been sustained for the reason that the appellee did not tender therein compensation for the betterments nor offer to restore the benefits she received from the appellant. The general rule is that a plaintiff in a suit for the rescission or cancellation of a written instrument should allege in his bill that prior to the institution of his suit he had a made a formal tender to restore to the defendant whatever benefits he had received as the result of the transaction, or that he had offered to return such benefits. This principle grows out of the equitable maxim that, "He who seeks equity must do equity." 4 R. C. L. pp. 511-12-13.

The rule is not applicable here for the reason that the allegations of the appellee's complaint show that the appellee received no benefits whatever by way of consideration for the deed which she executed to appellant. But on the contrary the allegations of her complaint show that as a result of the conveyance the appellant had received personal property belonging to the plaintiff which she alleged was of the value of $1,700 and that he had received from the rents and profits from the farm the sum of $2,800 and that the labor of the plaintiff over and above what she had received was worth $700. Therefore, it is a complete answer to appellant's contention to say that the allegations of the complaint show that the appellee had received no benefits, and therefore there was nothing for her to tender or offer to return as a prerequisite to maintaining her suit for cancellation.

(2-4)   Appellant contends that the appellee is barred by laches and is estopped by her conduct from maintaining this suit. His counsel say that "he had had possession and management of the farm at least from the date of his deed in September, 1909, until the bringing of this suit in November, 1915, a period of a little over six years, and that according to the contention of the appellee he had not been contributing anything to the

support of herself or mother during the latter's lifetime nor to the support of appellee since the death of her mother.''

The testimony is exceedingly voluminous, and it has been abstracted in such manner as to necessitate our examining the record and reading the testimony of the witnesses in detail. To set out and discuss this evidence would extend this opinion to great length, and could not serve any wise or useful purpose. In fact, the nature of the evidence is such that it is far better that much of it be not preserved in the permanent records of our reports. It will suffice to state in a general way our conclusions.

If the appellee had predicated her right to a rescission and cancellation of the contract between herself and the appellant and a cancellation of her deed upon a mere failure of consideration in that appellant had refused to provide food and clothing and had failed to comply with his contract to support appellee and her mother by refusing or neglecting to furnish creature comforts that were necessary for their physical existence, then we would hesitate to say that the proof was sufficient to warrant the finding and decree of the court. For, while the appellee testified in a general way that appellant had never supported her or her mother, had never furnished them anything, and that the home place took care of them and supported them, and that they sold chickens and eggs to help buy their supplies, yet her testimony further shows that it was understood that she was to keep house for herself, her mother, and appellant, and they were all to live together. It further shows that he managed the farm and had control of everything on the place. Her testimony shows that it was contemplated that she was to do work on the place. In fact, she testified that she picked cotton, not because she had to, but because she wished to do so. While her testimony shows that the appellant neglected her and did not furnish her food and clothing and protect her from hard labor as she in-

tended should be done when she signed the contract and deed, yet the testimony of the appellant stoutly denied that he had failed in any respect to provide for the appellee and her mother the necessaries of life, and that he was at all times affectionate and attentive to them, and secured for them all the help they needed, and, in short, fully complied with his contract to support and maintain them. Therefore, as already stated, if it were only a question as to whether or not appellant had complied with his contract to provide the necessary food and clothing for the appellee and her mother, the burden being upon the appellee it could hardly be said that she had shown by the preponderance of the evidence that the appellant had breached his contract and that the consideration for the deed had failed. But the obligation of appellant to support and care for his grandmother and aunt during the remaining years of their lives, written as the express consideration in the deed, included not only the duty to furnish them food and clothing but also the duty to provide for them a home suited to their condition in life where they could live with comfort. It would be idle to say that he complied with his contract by merely administering to their physical necessities when by his conduct he had made it impossible for them to use or enjoy these necessities in ease and peace and had actually rendered their condition in life intolerable.

In addition to the allegation that appellant had failed to provide appellee and her mother "with all the necessary conveniences and comforts of life" appellee alleges that appellant "would frequently return home drunk or in an intoxicated condition, and sometimes bring others with him in a like condition and be boisterous and abusive and insulting to the plaintiff and subject her and her aged mother to great indignities and humiliation. That his continued acts of neglect, dissipation and abuse of plaintiff have been kept up until it has become intolerable and unbearable. That he quarreled at plaintiff, called her bad names, applied to her vile epithets, accused her of

stealthily slipping things away from the place, and has become so depraved that he often, when they were at home alone, solicited plaintiff to commit incest by cohabiting with him.  That his drunkenness and inhuman conduct have become unbearable for the plaintiff and for her own personal safety she has been compelled to leave her home and seek protection among her relatives.''

The court found among other things that appellant by his conduct towards appellee ''has rendered her condition with him intolerable and unbearable.''  The testimony of the appellee, herself, tends to prove specifically all these allegations.  She testifies that after the execution of the deed and as early as 1910 the appellant began to drink whiskey; he would go off and come home intoxicated and be very ill; he got worse every year; she would remonstrate with him and he would answer her in a very rough manner, telling her that it was none of her business.  She described fully many of his debaucheries and his conduct during those times much of which is exceedingly revolting, and clearly shows, if true, that appellant, instead of providing for appellee a home where she could live comfortably, had made her home a rendezvous for his own and associates' dissipation, and by so doing had rendered her condition in life wholly intolerable.

While appellant in his testimony categorically denies these alleged charges of drunkenness and misconduct, we are convinced from his own testimony and the testimony of other witnesses that these allegations are in the main sustained.  The testimony of the appellant, himself, shows that he contracted the habit of drink as early as 1904 long before the death of his grandfather.  While he denied that he ever drank whiskey at any time to an extent to cause him to neglect his business, and denied that he ever drank on the place, yet his own brother, who lived with them continuously during the year 1915, testified that he saw appellant there drunk or intoxicated a good many times and quarreling with the appellee three or four times; that he came in after night in an intoxicated condition and

brought others with him, whom witness presumed to be drinking. One witness, who lived with them in 1909, and who lived a little over one-half mile from them in 1910-11 and 12, and was about the house a good deal and witnessed the conduct of appellant, saw him drinking and keeping whiskey there all the time; saw him and others with him intoxicated frequently in the presence of the appellee; heard him say he built the little barn, back of the house, to lock his whiskey up in; heard him talking loud and making noises, had seen crowds over there a few times on Sundays and a few times had heard shooting and hollering on Sundays like drunken fellows. Another witness testified that more than once he had been over there and every time appellant had whiskey and would be drinking.

The testimony discloses, therefore, that the year after appellee had executed the deed appellant began to drink to excess and that the appellee remonstrated with him and endeavored to reform him and that he continued, notwithstanding, until his drunkenness, and misconduct towards appellee. produced thereby, became such as to render her condition intolerable.

The doctrine of laches and estoppel has no application to such a state of facts. The aunt could not be considered guilty of laches because she endeavored by persuasion to have her wayward nephew abandon his drink habit, which was manifestly the cause of his neglect of herself and mother, and his bad treatment of her. She could not be estopped because she had not upon the first occasion of his drunkenness and neglect declared his contract forfeited and taken steps to cancel the deed. If appellant had at any time yielded to the admonitions and entreaties of his aunt and had abandoned his cups and shown a willingness to comply with his contract, then the appellee would have had no cause of action against him. Therefore, it can not be held that appellee would be estopped because through several years she endured the profligacy of her nephew in an effort to reform him and

to obviate the necessity of having to resort to the law in order to secure her rights under the contract and deed.

This court is committed to the doctrine, which is supported by the great weight of authority, as announced in 4 R. C. L. p. 509, sec. 22, that: "Where a grantor conveys land, and the consideration is an agreement by the grantee to support, maintain, and care° for the grantor during the remainder of her or his natural life, and the grantee neglects or refuses to comply with the contract, that the grantor may, in equity, have a decree rescinding the contract and setting aside the deed and reinvesting the grantor with the title to the real estate." *Salyers* v. *Smith,* 67 Ark. 526-531; *Priest* v. *Murphy,* 103 Ark. 464; *Whittaker* v. *Trammell,* 86 Ark. 25.

The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract and, therefore, vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to regardless of any remedy that the grantor may have had also at law. See *Salyers* v. *Smith, supra;* 4 R. C. L. *supra; Russell* v. *Robins et al.,* 247 Ill. 510; *Luther Stebbins* v. *Joseph Petty et al.,* 209 Ill. 291; *Spangler et al.* v. *Warborough,* 23 Okla. 806; see also *Bruer* v. *Bruer,* 109 Minn. 260; *Abbott* v. *Sanders,* 80 Vermont 179; *Glocke* v. *Glocke,* 113 Wis. 303. See also, case note 43 L. R. A. (N. S.) 918-925.

The findings of the court, that the personal property involved was the property of the appellant and that appellant had received rents and profits sufficient to pay him for the improvements which he had placed upon the land, are correct. We find no reversible error in the record, and the decree is therefore affirmed.