HADEN *v.* HADEN.

4-3034

Opinion delivered June 12, 1933.

*L. A. Hardin,* for appellant.
*Roberts & Stubblefield,* for appellee.

BUTLER, J. Prior to July 2, 1928, the legal title to a small farm situated near Little Rock known as the Valley View Farm was in the appellant, Mrs. Nannie Haden, the mother of the appellee, H. M. Haden. On that day Mrs. Nannie Haden conveyed this farm to her son by warranty deed for the express consideration of $1, reserving however in the habendum clause for herself and assigns "the full possession, benefit and use of the above-described property as well as the rents, issues and profits thereof for and during my natural life."

This suit was instituted by the appellant to cancel the above deed and revest the fee in her. The allegation upon which her prayer for the relief named is grounded is that she was induced to execute the deed because of an agreement made by her son, the grantee, at that time to the effect that he would support her during the remainder of her life; that he had breached this agreement by failing to provide anything for her maintenance, and that he at the time still refused to pay her anything therefor; that he had taken possession of, and was then occupying, the farm and was refusing to pay to her any of the rents and profits arising therefrom. She further alleged that the appellee was not financially able to carry out his contract with her, and that "if he was ever able to do so his wife would not permit him to carry the same out."

The appellee answered denying some of the allegations of the complaint which we deem it unnecessary to set out and denied that the consideration for the execution of the deed was that the defendant should furnish a home and support and maintain the plaintiff during her natural life. but that the defendant, due to his love for the plaintiff, his mother, has in the past furnished, and does now, and will in the future, furnish a home for the plaintiff and maintain and support her.

By agreement of the parties the testimony in the case was taken orally at the bar of the court, and, after having considered the case on the pleadings and testimony adduced, the court found that a certain other deed

executed on July 2, 1928, was executed and recorded through error and mistake, but that the deed first mentioned ought not to be canceled, but that according to its tenor and effect the plaintiff was entitled to the possession and to the rents and profits arising therefrom for the year 1932 for which defendant was required to account. The court further found that as to the rents preceding the year 1932 the defendant had accounted to the plaintiff except for balance due on a rent note, which note was ordered delivered to the plaintiff or to her attorney, and possession of the premises decreed to her, and as to all other matters the complaint was dismissed for want of equity.

The appellant insists on appeal that a preponderance of the testimony establishes, first, the consideration for the execution of the deed as alleged in her complaint, and, second, that the same has failed because of the refusal of the defendant (appellee) to support and maintain her as he had agreed.

Another question arose incidentally during the progress of the trial which has been discussed somewhat by counsel for the respective litigants, namely, that as a part consideration there was a promise by the appellee made to the appellant, his mother, that he would not marry. It seems however, from a careful analysis of the testimony of Mrs. Haden, the mother, that this was not any part of the alleged consideration for the execution of the deed, and, while the chancellor did not make any finding of fact regarding what was indeed the consideration for the conveyance, the conclusion reached by him necessarily carries with it the finding that the question of appellee's marriage was not in the mind of either party at the time of the conveyance, or that it was a moving cause therefor. We therefore will discuss this phase of the case no further.

The real questions are, was the consideration as alleged by Mrs. Haden, and, if so, has it failed? As stated, the chancellor made no finding of fact, but his decree necessarily results from the findings that either the consideration was not as alleged or that the promise had

not been broken. We think the findings of the chancellor in the negative on both of these questions is not against the preponderance of the testimony.

As contended by appellant, under the settled rules in this jurisdiction, where land is conveyed upon the consideration that the grantee will support, maintain and care for the grantor during his life and the grantee neglects or refuses to comply with the contract, a court of equity will cancel the conveyance and reinvest the grantor with title to the estate. *Edwards* v. *Locke,* 134 Ark. 80, 203 S. W. 286; *Owen* v. *Owen,* 185 Ark. 1069, 51 S. W. (2d) 524. The facts do not warrant the application of this rule.

The facts established by the proof in the case are that the grantor in the conveyance was at the time of its execution, about seventy-four or five years of age. The grantee was her youngest son, and had never been married. He and his mother had lived together since 1918, in which year the husband and father died. Their association had been of the most intimate and affectionate nature. Appellee was admittedly a dutiful son and manifested for his aged mother great love and solicitude. She, on her part, adored her son. In the summer of 1928 they were both taken sick at about the same time and required the services of a professional nurse. During the convalescence of the mother the question came up as to the situation in which the son would have been left had the mother died, and she told her son to request a Mr. Britton who was in the employ of the Central Bank in its real estate department, and an old friend of hers, to come to see her. Mr. Britton did so, and they discussed the question of what provision she should make for the appellee. She told Britton of the kindness of her son, that what they had was the result of their joint efforts, and that she wanted him at her death to have all she had. She suggested the making of a will to that effect. After some discussion, it was decided between the two that, instead of making a will, she would convey the property to her son by deed. In furtherance of this, Mr. Britton on his return to the bank, drafted a warranty

deed conveying the Valley View Farm to the appellee for the express consideration of $1. In the meantime the appellee had been discussing the question with the trust officer at the bank informing him of his mother's intention, and caused Mr. Britton to draw the deed first mentioned in this opinion, the one in which there was a reservation to the mother of the possession and income derived from the farm during her life. Both of these deeds were taken or sent, by Mr. Britton to Mrs. Haden and read to her and explained and left in her possession for some two or three weeks, when Mr. Britton's secretary, who was a notary public, accompanied by Mr. Britton, visited Mrs. Haden, and she then signed and acknowledged both deeds and both were placed of record. This seems to have been done by some one connected with the bank, but it is clear that it was not the intention of the son for the mother to convey the present possession and revenue of the farm to him during her lifetime. During the year preceding the execution of the deed and until the latter part of 1929, the mother and son lived on the Valley View Farm, and she supposed that during 1929 he was still unmarried, but discovered sometime in November of that year that her son had married without her knowledge, and that he had been married for about nine months.

It is quite evident that this fact, when learned by the mother, grieved and angered her very much. It is not very clear when the son brought his wife home, but at any rate the mother determined to move to Kentucky where she had been born and reared, and where two of her sisters lived at a little town called Bandana. Just about this time the son wrote to one of his aunts at Bandana indicating to her the trouble in which he found himself. The mother remained with her sister in Kentucky for three or four months during which time the son converted a house he owned in the city into two apartments making out of it what is called a "duplex." It was his intention that he and his wife should occupy one apartment and his mother the other. When his mother returned, this arrangement was made and proved

satisfactory for a while, but the mother was not happy, and a sister came to visit with her for a time. The mother complained of neglect on the part of her son and of her daughter-in-law. She decided to go again to Kentucky where she remained until sometime in the year 1932, when she returned and instituted this suit.

At the time of her testimony she lacked but two months of being seventy-eight years old. Her son at that time was about forty-five. She testified at considerable length to the effect that before the execution of the deed her son promised to provide a home for her and to support her as long as she lived; that this was one of the reasons for the execution of the deed. She also stated that her son had failed to provide for her and had made it so disagreeable for her at home that she could live with him no longer, and that since her removal he had failed to provide for her maintenance. During the times the mother was in Kentucky the son wrote to her from time to time and these letters, appellant's counsel insist, corroborate her testimony and show of themselves that the appellee had virtually driven the appellant from his home and had refused to further support her.

On the question of whether or not there was a promise made by the son for future support, and that this was the inducing cause for the execution of the deed and contradictory of the testimony of the appellant, is the testimony of the appellee corroborated by that of Mr. Britton and one other witness and also by the recitals in the deed itself. The appellee testified that there was no mention made as to the support of his mother in the future because that was taken for granted; that he had done this since the death of his father, and that his mother knew that he would always do so.

Mr. Britton testified that, in discussing the question with the mother, nothing was said about the support that her son was to give her, but that the reason, as expressed by her for the act on her part, was that her son had been faithful to her, and that her present property was the result of his thrift and industry. It is also

clear that the reservation in the deed was occasioned by the forethought of the appellee to protect his mother in the event of some financial misfortune occurring to him in the future. This, of itself, tends to negative the idea that the consideration was the promise of the son to support his mother in the future.

On the question of the son's support of the mother and how the Valley View Farm was acquired, there is but little substantial conflict in the testimony. In 1918, when Mr. Haden, the father, died, Mrs. Haden's sole property was a small farm of eighty acres about sixty of which were in cultivation and on which there was a poor farm house. Appellee owned forty acres of land adjoining this farm which also had a small house upon it and about fifteen acres in cultivation. With the consent of his mother he traded the entire 120 acres of land for property in Memphis worth about $3,500. The value of the eighty acres was about $2,500 and of his forty acres about $1,000. At this time he was a bookkeeper drawing a salary, and he remained constantly employed until about the time of the beginning of the disagreement between him and his mother.. During these years he made frequent trades, improving each property as he acquired it with his own resources, and at all times keeping enough property in his mother's name to represent the value of the land owned by her in the beginning. During this time they lived together, she keeping house and he providing for all the necessary expenses. The title to the Valley View Farm was taken in the mother, and upon it the son expended a great deal in improvements making it much more valuable than when he purchased it. He stated, and the testimony warrants the conclusion, that, although the title was in the mother, in reality he owned a considerable interest in it. About the time the conveyance in question was made to the appellee the Valley View Farm was leased to a tenant for $500 a year for a period of five years. This tenant kept the farm about three years, but when values fell he found it impossible to continue and so abandoned his lease. For a part of the time after the mother left for

Kentucky, the appellee sent to her each month about $40. This was approximately the rental value of the farm for each month. About the time the tenant abandoned his lease the appellee lost his position and suffered in common with the community at large great financial reverses. For a while he sent his mother $30 a month. While they were in the apartments living together he furnished the apartment and the groceries for his mother and gave her $20 a month. After his mother left he found it necessary to reduce her remittance to $15 a month. She was boarding with her sister in Bandana and paying $10 a month board which appears to have been sufficient to take care of her part of the expense.

The mother complains that there was not enough furnished her to live on, but the fact remains that out of the sums furnished she was able, through a short period of time—whether it was one or two years is not clear—to save $200 which sum she brought back to Arkansas and had at the time she began this lawsuit. The letters that were written and which counsel contend fortify the appellant in her contention that she was virtually driven away from home, that appellee ceased to maintain her and refused to support her longer, were not so interpreted by the chancellor, nor do we thus construe them. The appellant, vexed by the intrusion of another woman in the affections of her son, dethroned from the supreme position she had long maintained in the household, and unable to comprehend the great losses sustained by her son and the decrease in his earning power, was hurt, angry and dissatisfied. The letters to us seem to express a plea for patience and understanding, and all the implications justly to be drawn from them are assurances to the mother of continued love of the son and an avowal of the purpose to provide for all her wants to the utmost extent of his ability.

Therefore, in any view of the case, we are of the opinion that the evidence justifies the judgment and decree of the chancellor. It is not to be doubted from the character of the appellee, as disclosed by this record,

that he will continue to do everything in his power to make the life of his old mother happy and easy.

The decree is affirmed.