GREEN *v.* WHITNEY.

4-8882                                    220 S. W. 2d 119

Opinion delivered May 9, 1949.

*Linwood L. Brickhouse* and *Downie & Downie,* for appellant.

*Ward Martin,* for appellee.

Minor W. Millwee, Justice. This is a suit by plaintiff, Lydia Green, against her son-in-law and daughter, Chester A. Whitney and Ruth Whitney, to set aside a deed and vest title in plaintiff to certain property located at 804 Izard Street in the City of Little Rock. The trial court declined to grant the relief sought, but instead found that a trust arose in favor of plaintiff in the amount of $3,059.89 expended by her in obtaining execution of the deed to defendants and improving the property. The court also declared an equitable lien upon the property to secure payment of the judgment. Plaintiff, Lydia Green, has appealed and defendant, Chester A. Whitney, has cross-appealed.

The decree contains findings of fact as follows: "The plaintiff, Lydia Green, is a colored woman, eighty years of age, and defendants are son-in-law and daughter of the plaintiff.

"In March of 1944 the plaintiff, Lydia Green entered into an agreement with Annie Johnson, the owner of property described as Lot 11, Block 248, Original City of Little Rock, Pulaski County, Arkansas, whereby the said Annie Johnson was to convey this property to the plaintiff, Lydia Green, for the following considerations, to-wit:

"The sum of One Dollar ($1.00) in hand paid by Lydia Green, and the covenants and agreements on the part of Lydia Green to maintain Annie Johnson on the premises throughout the lifetime of Annie Johnson in a comfortable condition; the further condition that Lydia Green immediately provide for Annie Johnson reading glasses, a set of false teeth and the proper clothing for her comfortable maintenance; the further consideration that Lydia Green would pay to Luvenia Smith the sum of $429.47 as reimbursement to the said Luvenia Smith of all taxes paid by her upon the above-described property; the further consideration that Lydia Green would pay the sum of $100 to C. P. Jones.

"It was the understanding between all parties that the defendants in this cause, Chester A. Whitney and Ruth Whitney, son-in-law and daughter of the plaintiff, Lydia Green, would live on the premises with plaintiff Lydia Green and Annie Johnson.

"On the 9th day of March, 1944, the defendant, Chester A. Whitney, wrote to the plaintiff, Lydia Green, requesting that the property be put in his name so that he might 'remain the head of the family', agreeing therein to care and provide for Annie Johnson and Lydia Green for the rest of their lives.

"On the 13th day of March, 1944, the said Annie Johnson executed a warranty deed to the above-described property to the defendants, Chester A. Whitney and Ruth Whitney, who thereby covenanted to perform the conditions set forth above, and, in addition, covenanted to maintain Lydia Green on the premises in a comfortable condition throughout her life.

"The plaintiff, Lydia Green, on the transfer of the property, as consideration for the deed, paid the sum of $429.47 to Luvenia Smith; paid the sum of $100 to C. P. Jones; paid the sum of $50 for false teeth for Annie Johnson, and between March 13, 1944, and June 15, 1944, expended a total of $2,115.42 for alterations and improvements to the property and $365 in furniture for the home.

"After the alterations and improvements were completed, the said Annie Johnson, Lydia Green, Chester A. Whitney and Ruth Whitney moved into the above-described premises and lived there together until August 8, 1946, on which date Annie Johnson died.

"The plaintiff, Lydia Green, continued to live with defendants until the 2nd day of November, 1947, at which time she was forced to leave the home, seek shelter elsewhere and become a subject of charity because of the fact that the defendant, Chester A. Whitney, neglected and abused the plaintiff, subjected her to indignities, and such food, shelter and clothing and other physical necessities as were provided, were provided under con-

ditions which made it impossible for her to use and enjoy those necessities in ease and peace, and that her condition was thereby rendered intolerable.

"Since this cause of action was commenced, the defendant, Ruth Whitney, has filed suit for divorce against the defendant, Chester A. Whitney."

At the time of the execution of the deed in question, Lydia Green was living with defendants on Cross Street and other relatives had contributed to her support. The defendants were married in 1921, but were later divorced and remarried in 1941. Annie Johnson, who was approximately 100 years of age, owned and resided on the property in controversy. She was in debt and unable to provide for herself and the house was in need of extensive repairs.

In December, 1943, and the early part of 1944, Lydia Green received a total of $7,000 from the sale of oil leases on land in Mississippi in which she presumably had some interest. A proposed agreement was reached whereby Annie Johnson would deed her property to Lydia Green upon the latter's agreement to make the payments required by Annie Johnson and support her the rest of her life. A deed to this effect was drafted, but was not executed because of the objections of the defendant, Chester Whitney.

The letter of March 9, 1944, from the defendant, Chester Whitney, to Lydia Green, who was at the time residing with the defendants, is as follows: "Dear Sis Lydia Green, I accept this opportunity to thank you in Jesus' name for your intention of buying us a home, but since this setup isn't based upon righteousness I wish it to be droped, and you keep the money in the bank and I will go on providing for you and Ruth and just as I am doing, that I may remain the head of my house and wife of which Ephesians 5 Chapter and 23 Verse gives me. Or if you have in mind to give me something, I will get the place and deed it in my and Ruth's name and borrow an additional sum from you and give notes on the barber shop till paid back and sign a contract to take care of you and Sis Johnson as long as we live. So there isn't

anything rong in this proposal. Whatever be done will benefit all of us and I remain the head of my family just as I am now and you all haven't suffered. My reason for writing is to avoid unpleasantness whenever i try to explain anything. So be sweet and prarful for us that we always be together till the Lord separates us by death if that's his will. Your son-in-law, C. A. Whitney.''

When Annie Johnson executed the deed to defendants four days later, it was understood by all the parties that Lydia Green's money would be used to make the payments imposed upon the defendants by the terms of the deed and that she would also pay the expense of repairing the house. Annie Johnson resided with the defendants and Lydia Green on Cross Street after the deed was executed and until the repairs were completed in June, 1944, when the four moved to the property in controversy. After the repairs had been completed and paid for by Lydia Green, she learned that her title to the mineral rights in the Mississippi land had failed and she was required to return the balance of the $7,000 remaining after such expenditures.

It is the contention of plaintiff that the trial court erred in refusing to set aside the deed and vest title to the property in her. Plaintiff insists that defendants became constructive trustees of the property for her benefit; and that, since the property is now worth between $6,000 and $7,000, the action of the court has resulted in defendants' realization of a profit by their breach of contract and obligation to plaintiff.

The defendant, Chester A. Whitney, insists that no trust was created in the favor of plaintiff; that the evidence does not sustain the chancellor's finding that defendants breached their contract to support plaintiff; that the judgment for plaintiff was contrary to the pleadings; and that plaintiff's only remedy is an action at law for damages for breach of a contract under which she was merely a third party beneficiary.

It is well settled in this state that the grantor is entitled to cancellation of a deed based on the grantee's promise to maintain and support the grantor upon the

grantee's failure or refusal to carry out the promise. It is also the rule that where such continuing promise to support is broken, equity will presume the transfer to have been fraudulently induced and obtained in the first place. The rule is stated in the leading case of Edwards v. Locke, 134 Ark. 80, 203 S. W. 286, as follows: "This court is committed to the doctrine, which is supported by the great weight of authority, as announced in 4 R. C. L. p. 509, § 22, that: 'Where a grantor conveys land, and the consideration is an agreement by the grantee to support, maintain, and care for the grantor during the remainder of her or his natural life, and the grantee neglects or refuses to comply with the contract, that the grantor may, in equity, have a decree rescinding the contract and setting aside the deed and reinvesting the grantor with the title to the real estate.' Salyers v. Smith, 67 Ark. 526-531, 55 S. W. 936; Priest v. Murphy, 103 Ark. 464, 149 S. W. 98; Whittaker v. Trammel, 86 Ark. 251, 110 S. W. 1046.

"The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract and, therefore, vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to regardless of any remedy that the grantor may have had also at law." (Citing cases).

In most of our cases the suit is between the grantor and grantee and cancellation furnishes full and appropriate relief by reinvesting title to the property in the grantor. The case at bar presents a different factual situation in that plaintiff is not named as a grantor in the deed but merely as a beneficiary. Defendant argues that plaintiff cannot, therefore, demand cancellation because if such relief is granted the title would reinvest in the heirs of the grantor, Annie Johnson. Plaintiff contends that under the doctrine of presumed fraud as announced in Edwards v. Locke, supra, defendants are in the same

position in equity as though they had wrongfully converted plaintiff's money and used it to purchase the property and should be deemed constructive trustees of the property for plaintiff. Plaintiff relies on the general rule as stated in Humphreys v. Butler, 51 Ark. 351, 11 S. W. 479, and many other cases, as follows: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments or through undue influence, duress, taking advantage of one's necessities or weakness, or through any other similar means or under any other similar circumstances, which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto*, are practically without limit. The principle is applied wherever it is necessary, for the obtaining of complete justice, although the law may also give the remedy of damages against the wrong-doer."

In the case of Goodwin v. Tyson, 167 Ark. 396, 268 S. W. 15, this court recognized the right of beneficiaries other than the grantor to maintain a suit for cancellation of a deed after the death of the grantor. In that case a father executed a deed to his only son in consideration of the latter's promise to support the grantor and his wife during their lives and three minor sisters of the grantee during the term of their minority. The court there said: "A fair interpretation of the deed in question is that the beneficiaries named in the deed were not only to be furnished food and shelter and clothing and other physical necessities, but these were not to be provided under condition which made it impossible for them to use and enjoy those necessities in ease and peace, as

was said in Edwards v. Locke, supra, and it would not have been a compliance with the condition of the deed to have furnished these necessities but to have done so under circumstances which rendered the condition of the beneficiaries intolerable." While the right of the beneficiaries to the remedy by cancellation was recognized, they were denied relief because the evidence did not show a failure of the son to render support as required by the deed.

This court is also committed to the rule that where a promise is made to one party upon a sufficient consideration for the benefit of another, the beneficiary may sue the promisor for a breach of the promise. This general principle has been consistently recognized by this court, but our decisions are not in complete harmony as to certain limitations that have been recognized in its application. Mansfield Lbr. Co. v. National Surety Co., 176 Ark. 1035, 5 S. W. 2d 294. See, also, Dickinson v. McCoppin, 121 Ark. 414, 181 S. W. 151 and Freer v. J. G. Putman Funeral Home, Inc., 195 Ark. 307, 111 S. W. 2d 463, where it was held that the obligation of the promisee to the third person must be one that existed at the time of the making of the contract, or one which grew out of the contract itself.

When all the facts and circumstances in connection with the execution of the deed are considered in the instant case, it is clear that Lydia Green was more than a mere third party beneficiary. It is undisputed that Annie Johnson, who furnished the badly run-down property, was in debt and unable to care for herself and that plaintiff furnished the money to discharge the debts and improve the property in order to make it comfortably habitable for all the parties. The amount of money furnished by plaintiff was equal to, if in fact it did not exceed, the value of the property furnished by Annie Johnson in 1944. It was plaintiff's money that made the entire transaction possible and in the eyes of equity she became equally interested with Annie Johnson in the property conveyed to defendants. In these circumstances plaintiff should be treated as a joint owner of the property with Annie Johnson and accorded the same rights

and remedies which were available to the latter as grantor in the deed to defendants. If defendants have breached their contract to maintain and support plaintiff, she is, therefore, entitled to have the deed cancelled and the title to the property vested in her.

There is a decided conflict in the testimony as to whether plaintiff was forced to leave the home on account of intolerable treatment by the defendant, Chester A. Whitney. In urging the insufficiency of the evidence to support the chancellor's finding on this issue, defendant relies on the case of Fisher v. Sellers, 214 Ark. 635, 217 S. W. 2d 331, where we said that "if the grantor voluntarily leaves the home, or refuses the proffered and adequate support and maintenance, without the grantee being at fault, then, during the time the grantor renders performance impossible, he cannot claim that the grantee is violating the contract." It was there held that there was no corroboration of the grantor's testimony concerning the alleged mistreatment by the grantee (daughter).

In the case at bar plaintiff had been ill with diabetes and other ailments for several years. It is true that she left the home in November, 1947, ostensibly for an overnight visit with a friend where she apparently preferred to remain and live on charity rather than return to the household of defendants. According to the testimony of plaintiff and her daughter, the son-in-law frequently cursed and abused both in a manner such as to render it impossible for plaintiff to live in the home in peace and comfort. For more than a year prior to her departure, plaintiff made frequent complaints to her attorney of the abusive treatment. She also made similar complaints to her doctor and the friend with whom she made her new home. There was also evidence that Whitney refused to furnish medical service to plaintiff. This evidence was stoutly denied by Whitney and several witnesses in his behalf. We think it is clear from a consideration of all the evidence that plaintiff's condition was rendered intolerable within the meaning of our cases, and it is immaterial that this condition may have resulted in part from domestic difficulties between the defendants.

We conclude that the able chancellor erred in refusing to grant the relief sought by plaintiff. The decree is accordingly reversed on direct appeal and the cause remanded with directions to cancel the deed to defendants and vest title to the property in the plaintiff, Lydia Green.