BRIMSON v. PEARROW.

4-9277                                         234 S. W. 2d 214

Opinion delivered November 13, 1950.

Rehearing denied December 18, 1950.

---

28

*Ward Martin, Warren E. Wood* and *Griffin Smith, Jr.,* for appellant.

*Gerland P. Patten,* for appellee.

MINOR W. MILLWEE, Justice. This suit was instituted by Ocie Dona Pearrow to set aside a deed executed by her to appellants, Dr. James E. Brimson and wife, on May 1, 1942, conveying lots 5 and 6, block 1, Reubel and Leymer's Addition to the City of Little Rock, Arkansas. In the same suit Mrs. Pearrow also sought to cancel a deed between the same parties dated November 2, 1938, conveying lot 4 in the same block and addition, or, in the alternative, to recover the alleged unpaid purchase price of said lot.

The trial court found that the deed to lots 5 and 6 was void and same was ordered cancelled "because inequitable, without consideration, induced by fraud, and/or failure of consideration." The court further found: "That after giving credit for any and all amounts properly owing by the plaintiff to the defendants for merchandise furnished and money advanced, taxes paid on the property involved herein, and betterments to said property, and to plaintiff for payments made, the defendants are entitled to a judgment against the plaintiff in the amount of $720." A lien was declared on said

lots to secure the payment of said judgment. Each side has appealed.[1]

Under the will of her husband who died in 1932, Ocie Dona Pearrow acquired a life estate with power of disposition of the fee to lots 3 to 6, inclusive, in the above-mentioned addition. Mrs. Pearrow conveyed lot 3 to appellants on July 2, 1937, and lot 4 on November 2, 1938. The record reflects that in a former suit title to lots 3 and 4 was confirmed in appellants free from all claims except a lien for any unpaid balance of the purchase price. See, also, *Pearrow* v. *Vaden,* 201 Ark. 1146, 148 S. W. 2d 320, where we held that Mrs. Pearrow had the right to convey a fee title to lots 5 and 6.

All of the lots were mortgaged in 1936 when the mortgage indebtedness was reduced to $1,600 and refinanced through the efforts of Mrs. Pearrow's stepchildren. The 1937 deed to lot 3 recites a consideration of $450 in cash and the assumption by appellants of a series of unpaid notes due under the mortgage covering all the lots. The deed to lot 4 dated November 2, 1938, recited a consideration of $1,650 payable $150 in cash and the balance at $12.50 a month.

Dr. Brimson is a licensed physician and for several years has operated a retail drug and liquor store on the property first purchased from appellants. The lots in controversy are located in a growing suburban commercial district of Little Rock at the juncture of Asher Ave. and Fair Park Boulevard. After the sale of lots 3 and 4 to appellants, Mrs. Pearrow rented out two dwelling houses located on lots 5 and 6 except a part of one of the houses in which she resided. The evidence discloses that she began drinking heavily about 1938 and by 1942 had become a confirmed alcoholic. She was an elderly woman and in poor health, physically and mentally. Although the testimony is somewhat conflicting as to her mental capacity on May 1, 1942, it is certain that her inordinate appetite for intoxicants had made

[1] Ocie Dona Pearrow died after trial in chancery court and the appeal was revived in the name of her heirs and attorney as proper parties in interest on June 5, 1950.

her easily susceptible to undue influence at that time. She developed a strong dislike for her stepchildren and a close friendship for appellants.

The testimony shows that appellants regularly sold and furnished Mrs. Pearrow with intoxicants for a period of several years before and after execution of the 1942 deed and that such sales were made at times without regard to her condition as to sobriety. She was in and out of the County Hospital on account of her excessive drinking and at the time of the trial had been confined there for a year. A record of Mrs. Pearrow's account at appellants' store showed numerous and regular sales of gin and other intoxicants before and after May 1, 1942, during which time she was in an almost continuous state of intoxication. There is considerable variance in the testimony as to the value of the lots in 1942. An expert for appellee stated that the lots were worth $10,000 while appellants' expert witness placed the value at $600 in 1942, but stated that they were worth ten times that amount at the time of the trial.

The deed to lots 5 and 6, dated May 1, 1942, recited a consideration of "One Dollar and other valuable considerations Dollars, cash in hand paid to me by Doctor James E. & Elsie C. Brimson Grantees, and receipt of which sum is hereby acknowledged. . . ." On the same date the parties executed a "Lease Agreement" in which it was agreed that Mrs. Pearrow should retain possession of the property for life and appellants agreed to pay her $35 per month so long as she lived. On the date of the conveyance Mrs. Pearrow also signed a receipt to appellants for $350 as "down payment" on the property.

At the trial Dr. Brimson was called as a witness by appellee and testified that the actual consideration for the deed to lots 5 and 6 was $2,500. He denied any agreement to pay Mrs. Pearrow $35 per month and could not recall having signed the lease agreement, but readily admitted the genuineness of his signature thereto when confronted with the instrument. In an attempt to establish payment of the consideration of $2,500, Dr. Brimson stated that Mrs. Pearrow owed him a doctor bill of

"somewhere between $750 and $1,000" for the care of her husband who died ten years previously, and that this old debt was a part of the consideration. In this connection he testified: "The Court: When did you first think of this doctor bill? A. To be real honest and truthful I never did expect to get it. It didn't worry me a great deal. I wouldn't have ever brought it up if this thing hadn't come up. Q. (Mr. Patten continuing) By 'this thing' you mean this law suit? A. Yes."

Dr. Brimson also produced a receipt dated September 9, 1943, signed by Mrs. Pearrow reciting a payment to her of $1,080 and stating that it constituted full payment for lots 5 and 6. He testified that he advanced this amount in cash in order to enable Mrs. Pearrow to consummate a marriage she was contemplating at that time to a Mr. Taylor. Other close neighbors of Mrs. Pearrow knew nothing about the alleged marriage to Taylor. Mrs. Mary Bauer appeared to be a disinterested witness. She testified that she moved in one of Mrs. Pearrow's houses in October, 1942, and that Mrs. Pearrow at that time mentioned a previous marriage to Taylor. There was no record evidence of such marriage introduced and the greater weight of the testimony shows that if such incident occurred, it was long prior to the date of the 1943 receipt. The receipt also stated that Mrs. Pearrow would "evacuate the property," but she remained there for several years thereafter collecting rents as she had previously done without objection from appellants.

In *West* v. *Whittle,* 84 Ark. 490, 106 S. W. 955, this court set aside the deed of a confirmed drunkard to a friend and business confidant under circumstances somewhat similar to those in the instant case. In that case the court approved the following statement from the earlier case of *Hightower* v. *Nuber,* 26 Ark. 604: "And in a court of equity, where bad faith and unconscionable acts can have no allowance or favor, the strength of mental capacity of the parties, the circumstances surrounding them, their relationship, etc., make up the grounds upon which the court can find the real influences that produced the conveyance. And when it is discovered

that the party in whose favor the conveyance was made possessed an undue advantage over the grantor, and in person, or by agent, exercised an improper influence over such one, and to the advantage of the grantee, it is an act against conscience and within the cognizance of a court of equity.''

In the recent case of *Green* v. *Whitney,* 215 Ark. 257, 220 S. W. 2d 119, we reaffirmed the following rule stated in the leading case of *Edwards* v. *Locke,* 134 Ark. 80, 203 S. W. 286: ''This court is committed to the doctrine, which is supported by the great weight of authority, as announced in 4 R. C. L., p. 509, § 22, that: 'Where a grantor conveys land, and the consideration is an agreement by the grantee to support, maintain, and care for the grantor during the remainder of her or his natural life, and the grantee neglects or refuses to comply with the contract, that the grantor may, in equity, have a decree rescinding the contract and setting aside the deed and reinvesting the grantor with the title to the real estate.' *Salyers* v. *Smith,* 67 Ark. 526-531, 55 S. W. 936; *Priest* v. *Murphy,* 103 Ark. 464, 149 S. W. 98; *Whittaker* v. *Trammell,* 86 Ark. 251, 110 S. W. 1041.

''The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract and, therefore, vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to regardless of any remedy that the grantor may have had also at law.''

Applying these principles to the pattern of events surrounding the execution of the deed of May 1, 1942, we conclude that the chancellor correctly stamped it as a void transaction. If the consideration of the deed was $2,500 as testified by Dr. Brimson, then the court was warranted in concluding that the alleged payment of

$1,080 represented by the September, 1943, receipt was never in fact made, and that the alleged agreement to treat the old doctor bill as a part of the consideration was purely an afterthought. It would seem that the true consideration should be determined from the three written instruments executed on May 1, 1942, and consisted of the cash payment of $350 and the promise to pay Mrs. Pearrow $35 per month so long as she lived. It is undisputed that appellants intentionally failed and neglected to make the monthly payments provided in the lease agreement and equity will presume the conveyance to have been fraudulently induced and obtained in the first place. Mrs. Pearrow's age and her affliction by reason of long and excessive use of intoxicants furnished by appellants make this equitable rule peculiarly applicable to the facts in the instant case. It follows that the decree must be affirmed on direct appeal.

On the cross-appeal it is insisted the chancellor erred in rendering judgment against Mrs. Pearrow for $720 and that the evidence in fact warrants a judgment in her favor in approximately this amount. There was considerable evidence directed to whether the consideration for the conveyance of lot 3 in 1937 had been fully paid, but there was no allegation in the complaint with reference to lot 3 and no request that the pleadings be amended to conform to proof on this transaction which occurred nearly 12 years before the date of trial. It would unduly prolong this opinion to attempt to detail the testimony relating to discharge of the consideration set out in the conveyance of lot 4 in 1938. As to this lot, the principal contention is that the court erred in holding that a receipt for $512.50 dated April 15, 1940, and signed by Mrs. Pearrow, represented a valid payment. It is argued that this receipt was either falsified or altered by appellants to make it show $512.50 instead of $12.50, the amount of the monthly payments. There is nothing on the face of the receipt indicating an alteration. It is true that receipts of $12.50 were issued for months immediately subsequent to the April receipt, but the instrument does provide that it shall cover particular

payments and could have been given for past as well as future payments. We cannot say that the court's finding on the validity of the receipt was erroneous.

It is clear from the evidence that appellants paid $350 on the date of the execution of the deed to lots 5 and 6, $150 for roofing a house on lot 6, and $107.54 in taxes accruing since 1943. It is evident from the recitals of the decree that the chancellor also included in the judgment against Mrs. Pearrow certain items of merchandise, other than intoxicants, which she purchased from appellants. We hold that such items do not represent recoverable betterments for which appellants would be entitled to a lien on the property under the equitable doctrine of restitution. On the cross-appeal the judgment in favor of appellants will, therefore, be reduced to $607.54. As thus modified, the decree is affirmed.

GRIFFIN SMITH, C. J., not participating.