HENDRIX *v.* THOMAS.

5-2787                                                      362 S. W. 2d 22

Opinion delivered November 26, 1962.

*Maner & Stanley,* by *Fenton Stanley,* for appellant.

*Joe W. McCoy,* for appellee.

NEILL BOHLINGER, Associate Justice. This case was brought in the Chancery Court of Hot Spring County by Charlie V. Hendrix, an incompetent, by his brothers and sisters as his next friend against Robert Thomas and Dovie J. Thomas and sought the cancellation of two deeds which the appellant, Charlie V. Hendrix, and his wife had executed conveying their home in Malvern, Arkansas to the appellees.

It was alleged that Charlie V. Hendrix was mentally incompetent to transact his business affairs and that Eliza J. Hendrix, the wife of Charlie V. Hendrix, was physically and mentally depressed and that while she was in the home of the appellees and in that state of health she was fraudulently induced to transfer the property in Malvern to the appellees; that the transfer of the title to their property was void by reason of the mental incompetency of the grantor; that the deeds were procured by duress and the exercise of undue influence by the appellees; that the deeds were given without consideration or upon a grossly inadequate consideration; and, that there was such a failure of the consideration that the transaction resulted in a fraud upon Charlie V. Hendrix.

While the case was pending, the First National Bank in Little Rock, having been appointed guardian of the estate of the incompetent, was substituted as plaintiff.

The case was duly tried and on October 3, 1961, the chancellor entered a decree dismissing with prejudice the complaint in this cause and from that action comes this appeal.

The record reflects that on the 13th day of May, 1959, the title to the property here involved was transferred by the appellant, Charlie V. Hendrix, to Eliza J. Hendrix, his wife, and she in turn delivered a warranty deed to the same property to the appellees herein, the deed reciting

$1.00 and other considerations and she retained in such deed a life estate in herself.

Much testimony was taken before the chancellor and it appears that Charlie V. Hendrix, if not incompetent, was suffering from a speech impairment and that his wife had cared for him for a long period of time in realization of his lack of capacity to care for himself and his physical needs. It further appears that Eliza J. Hendrix was, at the time of the execution of the deeds on May 13, 1959, suffering from a malignancy from which she died the following September. After the death of Eliza J. Hendrix, the appellees took the incompetent appellant to their home and three days after the burial of Eliza J. Hendrix, on September 21st, the appellees transported the appellant, Charlie V. Hendrix, to the federal mental hospital at Ft. Roots where he remained until he was released to his sister, Mrs. Madie Pippin, in December of 1959. He has remained in her home near Jacksonville, Arkansas, ever since.

The evidence is, for the most part, convincing that Charlie V. Hendrix was an incompetent and the Probate Court of Pulaski County so found but there is an absence of testimony as to whether or not Charlie V. Hendrix, at the time of the execution of the deeds on May 13, 1959, was aware of the extent and value of his one piece of property and to whom he was transferring it or for what consideration, but the following facts are clear: Eliza J. Hendrix was dying of a cancer; the appellee, Mrs. Dovie J. Thomas, was her sister and appellees seem to have made a number of trips to the home of Charlie V. Hendrix and Eliza J. Hendrix in Malvern; they carried Mrs. Hendrix to a hospital and to doctors and for a while moved Mr. and Mrs. Hendrix to the Thomas home in Little Rock. We are now confronted with the question as to whether or not if Charlie V. Hendrix, as the chancellor found, was capable of transferring and disposing of his entire estate, were the circumstances such as to preponderate in favor of a finding of fraud in the procurement of the two deeds by which Hendrix divested himself of his home. One deed was made to his wife and at the same time the wife executed her deed to that home to the appellees.

The consideration recited in the deeds is $1.00 and other valuable considerations. In searching for the fraud that is alleged we look to the circumstances by which appellant's home was transferred to the appellees. Viewing the testimony, as to the consideration, in the light of the circumstances that confronted Hendrix and his wife we find it difficult to believe that the deeds were given, as the appellee, Mrs. Thomas, stated, "they gave me that for helping them in their illness." There was nothing rendered to the appellants by the appellees in the period that preceded the death of Mrs. Hendrix in September that would not have been prompted by a warm personal friendship in addition to services which would be engendered by the tie of blood and we conclude that the next statement of the appellee, "yes, she asked me if I would take care of him [Hendrix] and I said I would see that he was cared for," was the basic reason for the conveyance.

There are two other witnesses as to the promises which prompted the giving of the deeds. The appellee, Dovie J. Thomas, testified: "I said I promised my sister that I would care for him," and the witness, Mrs. Spears, who heard the conversation when the deeds were explained by the attorney who drew them, was definite in her statement: "The place was to be deeded to Mr. and Mrs. Thomas to see after Mr. Hendrix." Mrs. Pippin, the sister of the incompetent appellant and who is the duly appointed guardian of his person, testified in regard to a conversation with Dovie J. Thomas: "She said she promised Liza that she would take care of Charlie but she didn't promise that she would take care of him at her house." However, it is immaterial as to which line of testimony we take. Whether the out-and-out statements of Mrs. Thomas and Mrs. Spears that the appellees would care for the incompetent, or the more guarded statement of the appellee, Robert B. Thomas, that he would see he was taken care of is true, the result is the same for the appellees have failed to do either of these two things.

Eliza J. Hendrix was buried on September 21, 1959, and her husband, the incompetent appellant, was taken by the appellees to their home in Little Rock and on Septem-

ber 24th, or three days after they started caring for the appellant, they delivered him to the mental hospital. When the appellees placed the incompetent in the mental hospital they were doing nothing for him that he could not have done for himself. He had earned the right to the care which the government hospital afforded by reason of his service in the army. He could have committed himself, for the appellees testified that the incompetent had his admission card on him when they delivered him there, or he might have been committed by any veteran's agency or by a court and the only thing that the appellees furnished toward his care was the automobile ride from their home in Little Rock to the mental institution at Ft. Roots.

There seems to have been but one person, after the death of the appellant's wife, who has displayed any degree of interest or care for his welfare and that is his sister, Mrs. Pippin. She made efforts to have him released from the mental institution and finally, in December, the hospital authorities deemed it prudent and released the incompetent to her.

The only logical conclusion that can be taken from the testimony in regard to the deeds is that the sole asset that the incompetent had to shield him from charity was his home which was given away. His plight was so pitiful that one witness testified that his wife had to fix his food on his plate and watch him while he was out in the yard as though he were a little child. Death was imminent for the wife and she therefore gave up their sole asset to assure him of some degree of care and comfort after her death.

This support the appellees have failed to provide. They have not cared for him or seen that he was cared for and when they saw the doors of the mental institution close on him they deemed their promise of care had been fulfilled. Neither can they take refuge behind the fact that a guardian was appointed for him. The books are replete with instances in which guardians have been faithless to their trust and the estates of incompetents and minors have, in many instances, been dissipated and some incom-

petents and minors, for lack of care by their guardians, have suffered hardship and privation which their estates might have mitigated. If this incompetent has a kind and considerate guardian it is by a fortuitous circumstance for which the appellees can take no credit.

The appellee, Mrs. Thomas, seems to have objected at the hospital to the custody of the incompetent being given to Mrs. Pippin and while the record discloses recitals of care and solicitude on behalf of the appellees toward Mr. and Mrs. Hendrix prior to the death of Mrs. Hendrix, we find no instance in which the appellees have concerned themselves as to the extent and kind of care that the incompetent was receiving since Mrs. Hendrix' death although they had received a valuable piece of property under a promise that they would care for him.

In the case of *Cannon* v. *Owens,* 224 Ark. 614, 275 S. W. 2d 445, we said:

"* * * It is true that when a promise of future support is made in good faith, the cause of action for its breach is personal to the promisee and cannot be asserted by his heirs. *Priest* v. *Murphy,* 103 Ark. 464, 149 S. W. 98; *Jeffery* v. *Patton,* 182 Ark. 449, 31 S. W. 2d 738. But nonperformance of the promise may also be evidence of fraud in the original procurement of the deed, giving rise to a cause of action that does survive the promisee's death. *Phillips* v. *Phillips,* 173 Ark. 1, 291 S. W. 802; *Richey* v. *Crabtree,* 198 Ark. 25, 127 S. W. 2d 269.''

In the instant case we have the nonperformance of a promise and that nonperformance had its inception within three days of the burial of the incompetent's wife.

In *Owen* v. *Owen,* 185 Ark. 1069, 51 S. W. 2d 524, we said:

"This court is committed to the doctrine that, where a deed is executed in consideration of the agreement by the grantee to support the grantor, and this agreement is made by the grantee for the fraudulent purpose of securing the deed, and without intending to carry it out, and it has this effect, it constitutes a fraud vitiating the conveyance, and

equity will set it aside. *Salyers* v. *Smith,* 67 Ark. 526, 55 S. W. 936; *Boyd* v. *Lloyd,* 86 Ark. 169, 110 S. W. 596; *Edwards* v. *Locke,* 134 Ark. 80, 203 S. W. 286; *Jeffery* v. *Patton,* 182 Ark. 449, 31 S. W. 2d 738; and *Federal Land Bank of St. Louis* v. *Miller,* 184 Ark. 415, 42 S. W. 2d 564.''

The same rule was laid down and discussed in *Brimson* v. *Pearrow,* 218 Ark. 27, 234 S. W. 2d 214:

''* * * In the recent case of *Green* v. *Whitney,* 215 Ark. 257, 220 S. W. 2d 119, we reaffirmed the following rule stated in the leading case of *Edwards* v. *Locke,* 134 Ark. 80, 203 S. W. 286: 'This court is committed to the doctrine, which is supported by the great weight of authority, as announced in 4 R.C.L., p. 509, § 22, that: ''Where a grantor conveys land, and the consideration is an agreement by the grantee to support, maintain, and care for the grantor during the remainder of her or his natural life, and the grantee neglects or refuses to comply with the contract, that the grantor may, in equity, have a decree rescinding the contract and setting aside the deed and reinvesting the grantor with the title to the real estate.'' *Salyers* v. *Smith,* 67 Ark. 526-531, 55 S. W. 936; *Priest* v. *Murphy,* 103 Ark. 464, 149 S. W. 98; *Whittaker* v. *Trammell,* 86 Ark. 251, 110 S. W. 1041.

The rationale of the doctrine is that an intentional failure upon the part of the grantee to perform the contract to support, where that is the consideration for a deed, raises the presumption of such fraudulent intention from the inception of the contract and, therefore, vitiates the deed based upon such consideration. Such contracts are in a class peculiar to themselves, and where the grantee intentionally fails to perform the contract, the remedy by cancellation, as for fraud, may be resorted to regardless of any remedy that the grantor may have had also at law.

It thus appearing that the deed from Eliza J. Hendrix to Robert B. and Dovie J. Thomas should be set aside, it brings us to consideration of the deed from Charles and Eliza Hendrix to Eliza Hendrix. In the recent case of

*Henslee* v. *Boyd,* 235 Ark. 369, 360 S. W. 2d 505, this court said:

"* * * The two instruments were executed together, in the course of the same transaction, and should be considered as a single contract not only in the matter of interpretation, *Gowen* v. *Sullins,* 212 Ark. 824, 208 S. W. 2d 450, but also, we think, in the determination of whether rescission is proper."

We therefore treat both instruments as a part of the same scheme and both deeds should accordingly be set aside.

The decree in this case is accordingly reversed and remanded with directions to cancel the deeds above referred to and vest the title to the involved property in the guardian of the estate of Charlie V. Hendrix, incompetent.

The chancery court will take proof and ascertain if any rents and profits have accrued from this property since the death of Eliza Hendrix and enter proper judgments in behalf of the estate of the appellant, Charlie V. Hendrix.

In briefing the case for the appellant the attorneys have failed to include a transcript of the testimony of the appellees which is required by Rule No. 9 of the rules of this court, (d) the abstract being designed to bring before the court the material parts of the pleadings, proceedings, facts, documents, and other matters in the record that are necessary to all questions presented to this court for decision. The appellees have, in order for this court to be advised of the facts, supplied the deficiency in appellant's abstract. The trial court will ascertain the costs to the appellees of supplying that part of the abstract and judgment against the appellant will be entered for that amount. Otherwise, the appellant will recover costs. It is so ordered.