McEvoy v. Tucker.

Opinion delivered November 30, 1914.

1.   Insanity—conveyance—validity.—In an action to set aside a conveyance of real estate on the ground of the insanity of the grantor, in order to be entitled to relief the proof must show inability on the part of the grantor to exercise a reasonable judgment in regard to the matter involved in the conveyance, and to invalidate the deed. The insanity must be such as to disqualify the grantor from intellectually comprehending and acting upon the business affairs out of which the conveyance grew, and to prevent him from understanding the nature and consequences of his act.

2.   Insanity—conveyance—validity.—In an action to set aside a conveyance of real estate on the ground of the insanity of the grantor, the evidence held to show that when the deed was executed that the grantor was non compos.

3.   Insanity—conveyance—equitable relief.—Equity will relieve against the irresponsible act of a non compos grantor, who executes a deed to his property, irrespective of the consideration passing to the grantor in the transaction.

4. INSANITY—CONVEYANCE—CONSIDERATION—EQUITABLE RELIEF.—T h e conveyance of an insane person is void without regard to the ade-quacy of the consideration.

5. INSANITY—CONVEYANCE—CONSIDERATION—ADEQUACY—EQUITABLE RE-LIEF.—In an action to set aside the deed on the ground that the grantor was *non compos* at the time of the execution of the deed, evidence of the inadequacy of the consideration is admissible, and when the consideration is inadequate and the grantor is *non compos* equity will the more readily grant relief.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

STATEMENT BY THE COURT.

On the 24th day of September, 1912, appellee O. D. Tucker purchased from H. D. Parker lot 3, of block 72, in the city of Little Rock, for a consideration expressed in the deed of "$1.00 and other considerations," but which was in fact $7,500. Parker was an unmarried man and his deed was a warranty deed in common form, and this suit was brought to cancel that deed on account of his mental incapacity at the time of its execution. There was an allegation in the complaint that fraud had been practiced by the grantee in the procurement of the execution of the deed, but no proof was offered in support of this allegation, except that the grantor was, in fact, insane, and that the land had been bought for a grossly inadequate consideration. The answer denied all the material allegations of the complaint and alleged that a fair and adequate consideration had been paid for the property.

Parker died March 29, 1913, leaving a will, made in 1909, in which E. F. McEvoy was named as executor, and also as trustee of the property after the payment of a few legacies, with full power to manage the estate. On February 27, 1913, Parker was declared *non compos mentis* by the Pulaski Probate Court, and P. C. Ewing was appointed guardian. This suit was brought by Ewing as guardian under authority from the probate court, and, after the death of Mr. Parker, was revived in the name of McEvoy as executor and trustee. A tender of the con-

sideration, with the interest thereon, was made by the executor, the estate being a valuable one.

Only one physician testified and, while he did not undertake to qualify as a neurologist or alienist, he appears to have had very definite views of Mr. Parker's mental condition, which were formed under circumstances affording ample opportunity for observation and for the formation of this opinion. This witness was Dr. W. B. Hughes, who testified substantially as follows: That he had been a physician for twenty-one years and had known Mr. Parker for thirty-five, and had been his physician for the last year or year and a half of his life, and saw him and prescribed for him a number of times. That another doctor, who had been Parker's regular physician, died in February, 1912, but before that time witness had treated Parker occasionally and afterward was his regular physician, and had prescribed for him at different times during the summer of 1912, and saw enough of him during the last year, or more, of his life to know what his mental condition was. And he stated that, for the last year of Mr. Parker's life, his mental condition was bad, and that he did not think his capacity was such as to justify him in attending to business or attempting to attend to business, and that he did not regard him as capable of executing important papers, for the reason that he was incapable of exercising a rational judgment about such matters, and that he grew worse all the time. Witness did not undertake to state his condition on the date of the execution of the deed, as he had no reason to remember that date specially, but he did know what his condition throughout that month had been, and that this condition was one of senility, as he had broken down mentally and physically, and was incapable of doing physical work.

He was asked to state what he meant by senility and, in answer, said it was a deterioration both mental and physical, which condition had been brought about in Mr. Parker's case by long continuous hard work without any rest or recreation, and oncoming age. Witness stated further that Mr. Parker appeared to be unable to follow

any continuous line of thought at all, and would frequently, in the midst of a conversation, break off and go to sleep—go to sleep in his chair. That he appeared to be very childlike and would laugh at trivial things, and, in a general way, he noticed that he grew weaker, both mentally and physically, and for some months before his death had lost control of his bowel movements and of his bladder, and could not remember from one hour to another, as a rule, what he was doing. He stated, however, that at times he seemed much brighter than at other times, but that he was not at any time like he had been prior to his breakdown.

Sam W. Reyburn testified that he was president of the Union Trust Company, an institution with which Mr. Parker was connected during the last years of his life, and that at one time Mr. Parker had been a very astute, painstaking business man, and had been trust officer of that company. That witness saw him almost every day during the last two years of his life and observed a gradual wasting away of his old-time vigor and ability, and that he gradually reduced his duties until in August, 1911, there was practically nothing left for Mr. Parker to do, although for some time thereafter a few minor duties were assigned to him, but even when this was done, some one was directed to keep right after him to see that no mistakes were made. That Mr. Parker was induced to take a vacation a time or two, which benefited him, but he would hold up only a few days, when he would become cross and irritable, and that this went on for almost a year, during which time there were two or three clients whose business Mr. Parker nominally attended to, but witness observed him closely to see that no mistakes were made, and that practically no duties were required of him during the last year of his life. That in the summer of 1912, his condition appeared to get critical, after which his associates knew that his mind was affected, but they hoped and tried to believe that his condition was physical. That Mr. Parker would promise to do anything he was told to do about the office, but would forget and fail to do

what he had promised. After the deed was made he was asked at what price he had sold the land, but declined to say. That one of the trust company's clients, whose business had been looked after by Mr. Parker, was a Mrs. Reid, and he had permitted her affairs to become involved, and they were straightened out only after some difficulty. That about the time of the sale, Mr. Parker was the administrator of an estate, and had voluntarily paid large sums of money for the debts of that estate for which he was in no way personally liable, and which sums were later recovered by Mr. Parker's guardian. This witness stated that he last saw Mr. Parker before the execution of this deed about the 14th of September, 1912, at which time he considered him incapable of attending to his business or exercising a reasonable judgment in regard to his affairs, and that he gradually got weaker and worse, both physically and mentally, until his death. This witness stated that one talking to Mr. Parker casually might not notice that he was not at himself, and that witness did not regard Mr. Parker as insane on any particular subject, but just thought he had run down and played out, although he might have impressed a stranger, who had not observed him closely, that he still retained his faculties.

A number of the other officers and employees of the Union Trust Company who came in daily contact with Mr. Parker testified in substantial corroboration of Mr. Reyburn, and detailed a number of circumstances which indicated a growing mental infirmity and the final loss of his faculties.

Appellee testified in his own behalf that he had known Mr. Parker for a number of years, and had no intimation of any impairment of his mentality, and stated the fact to be that Mr. Parker's mental faculties were not impaired. One or two other witnesses testified as to certain conversations which they had had with Mr. Parker, and stated that they had not observed any lack of mental capacity. But these witnesses had had only a very limited

association with Mr. Parker and no opportunity to observe him closely.

There was a wide conflict in the evidence in regard to the value of the property, and its value was placed at all the way from $6,500 to $14,000; but the great preponderance of the evidence is that the property was worth more than $7,500 at the time of the execution of the deed. Appellee admitted that the property was worth considerably more than he paid for it, but he says this excess in value was due to certain improvements and new buildings in the vicinity of this lot which were only prospective at the time of his purchase. The disparity between the purchase price and the value of the lot is not so great, however, as, of itself, to furnish any very satisfactory evidence of Mr. Parker's lack of mental capacity, although it is shown that some months prior to this sale he had expressed himself very emphatically as being unwilling to take less than $12,000 for the property; and we think that the proof shows that the property could have been sold for a considerably larger sum than was received, at any time within a year or so prior to the date of the sale.

The chancellor found that Mr. Parker was not *non compos,* and refused to set aside the conveyance.

*Ratcliffe & Ratcliffe,* for appellant.

1.   Parker had not sufficient mental capacity to execute the deed.   Where there is want of capacity chancery will grant relief.   23 Ark. 175; 13 Cyc. 573-4.

2.   Where, in addition to mental incapacity, there is inadequacy of consideration, equity will intervene and set aside a conveyance.   15 Ark. 555; 23 Cyc. 574.

*S. L. White,* for appellee.

1.   The price is not shown to have been inadequate.

2.   The evidence fails to show insanity or *non compos mentis,* on the date of sale.   Partial loss of memory, feeble health, infirmities of age, and derangement of mind on particular subjects, do not constitute legal incompetency to make a valid contract.   23 Ark. 175; 70 Ark. 165; 13 Cyc. 574.

Smith, J., (after stating the facts). (1) The decision of this case turns upon the question of fact as to whether or not the chancellor's finding is contrary to the clear preponderance of the evidence; and we have concluded that it is. The test of mental capacity to execute a deed was stated by Justice Riddick in the case of *Seawel* v. *Dirst,* 70 Ark. 166, in which case it was said: ''It follows, therefore, that the proof which is designed to invalidate a man's deed or contract on the ground of insanity must show inability to exercise a reasonable judgment in regard to the matter involved in the conveyance. * * * To have that effect (*i. e.,* to invalidate the deed), the insanity must be such as to disqualify him from intelligently comprehending and acting upon the business affairs out of which the conveyance grew, and to prevent him from understanding the nature and consequences of his act.''

(2-3-4-5) When this test is applied to the evidence in this case, we feel constrained to hold that the deed in question should be set aside. It may be true that appellee was unaware of Parker's mental condition; but it is not essential that the proof show that he did, in fact, possess this information. And it may be true that persons who had only casual conversations with Mr. Parker may not have been impressed with his loss of mentality; but while these things are so, it is also true that those witnesses who associated with him most intimately and had the best opportunity to observe him and form an opinion as to his sanity, became impressed with the gradual loss of physical vitality and mentality and were all of the opinion that at the time of the execution of the deed he was *non compos,* and we conclude therefore that a court of equity should relieve against his irresponsible act in the execution of the deed. Having reached this view, it is immaterial whether the consideration was full and adequate or not, as the conveyance of an insane person is void without regard to the adequacy of the consideration. See note 13 Cyc. 574. But, as stated, we think the evidence in this case shows an inadequate consideration, and that is a cir-

cumstance to be considered in determining whether relief shall be granted in cases of this character, for if, in addition to mental incapacity, there is also inadequacy of consideration, equity will the more readily intervene to set aside a conveyance. *Kelly's Heirs* v. *McGuire*, 15 Ark. 555.

We have concluded, therefore, that the decree of the chancellor should be reversed, and it is so ordered, and the cause will be remanded with directions to the chancery court to enter its decree cancelling and annulling the conveyance in question upon the payment to appellee of the consideration paid by him, together with interest at the rate of six (6) per cent, within some period of time to be fixed by the court.