W. G. SHAFFER, Guardian, Appellant, v. JOSEPH H. ZUBROD et al., Appellees.

**FRAUDULENT CONVEYANCES:** Confidential Relations—Parent and
1  Child. Proof of close relationship between a grantee and a grantor,
   e. g., parent and child, does not, of itself, create a presumption of
   *confidential* relationship.

**MORTGAGES:** Release—Consideration—Presumption. Presumptively,
2  a written release by a mortgagee of a mortgage is supported by a
   sufficient consideration.

Headnote 1: 29 Cyc. p. 1657. Headnote 2: 27 Cyc. p. 1421 (Anno.)

Headnote 1: 12 R. C. L. 488.

*Appeal from Chickasaw District Court.*—JAMES D. COONEY, Judge.

APRIL 9, 1926.

REHEARING DENIED DECEMBER 16, 1926.

Action to set aside a cancellation and release of a real estate mortgage and to reinstate the same. The court dismissed the plaintiff's petition. The facts appear in the opinion.— *Affirmed.*

*M. E. Geiser* and *E. P. Donohue,* for appellant.

*Condon & Clary,* for appellees.

FAVILLE, J.—Appellant was appointed guardian of one Florentine Garnatz, and as such guardian instituted this action. Subsequently the ward died, and appellant was appointed administrator of her estate, and substituted as plaintiff.

The decedent was married twice. Her first husband's name was Zubrod, and to this marriage three sons and one daughter were born. Appellee Joseph is one of said sons, and appellee Louisa is his wife. Decedent was divorced from Zubrod, and married Garnatz. It appears that, during the time involved in this action, she and her husband were not living together, the

husband living with a son of his at Marion, Iowa.  The decedent owned a farm of eighty acres near the city of New Hampton. She also owned a dwelling house in Oelwein, Iowa, the value of which does not appear in the record.  On August 24, 1918, the decedent entered into a written contract with appellees whereby she agreed to sell to appellees the said eighty acres for $8,000, payable $100 in cash, $1,900 on or before April 1, 1919, and the balance of the purchase price to be evidenced by a mortgage of $6,000, due in ten years at five per cent.  Pursuant to said contract, the decedent and her husband executed a warranty deed conveying said described real estate to appellee Joseph.  Said deed was dated May 26, 1919, but was not recorded until May 4, 1920.  It appears that the $2,000 provided for in the contract was paid to the decedent in money, and on or about May 27, 1919, appellees executed a mortgage upon said real estate in the sum of $6,000.  The mortgage was duly recorded.  On May 3, 1920, the decedent released said mortgage of record on the margin thereof, in the manner provided by law. This action was instituted in October, 1921, to set aside said release and to reinstate said mortgage.  The petition charges that the release of said mortgage was obtained by undue influence on the part of appellees and by false representations, and that the execution of the same was without consideration.  There is no specific allegation of a want of mental capacity on the part of the decedent, except such as may be inferred from the broad statement that:

"The plaintiff's said ward being at the time subject to his [the defendant's] wiles and influence."

The evidence with regard to the mental capacity of the decedent is, in any event, wholly insufficient to support a finding that she was not possessed of sufficient mental capacity to execute the instrument in question at the time of its execution. She was past seventy years of age at the date of the execution of said release.  She had kept a bank account for a number of years, and had transacted her own business in relation thereto. She also was fully advised in regard to her own property, and handled the same largely through the advice of her banker. The record shows that, at the time of the transaction, her faculties were not impaired, and she was fully competent to execute the release in question.

Appellant strenuously urges that a fiduciary relation existed between the decedent and her son, the appellee Joseph, and that the burden rested upon appellee to show that the transaction was free from any taint of fraud and was for a valuable consideration. It does not necessarily follow that the mere fact of relationship between a parent and an adult child is of itself sufficient to create a fiduciary relation and to shift the burden of proof upon the child who may be a grantee, to prove the *bona fides* of a transaction that is called in question. The mere relationship of parent and adult child does not prevent the parties from dealing with each other, and such relationship does not of itself, without more, place the burden upon the adult child to establish the *bona fides* of the transaction. *Gregory v. Bowlsby,* 115 Iowa 327; *McKee v. McKee,* 190 Iowa 1357.

1. FRAUDULENT CONVEYANCES: confidential relations: parent and child.

In the instant case there is no showing that any special relationship of confidence or trust existed between the parties, or that the decedent was dependent in any way upon the counsel of appellee. She had her own bank account, and attended to her own affairs, and did the same intelligently and prudently, and without consulting appellee. There is nothing in the record to show that she depended in any way upon the advice of appellee Joseph, or that she had ever solicited such advice from him in regard to business matters. The parties were not living together, and there is nothing shown regarding their relationship and manner of living and dealing with each other that placed the burden of proof upon appellee to establish the *bona fides* of the transaction.

The evidence in behalf of appellees, under their plea of payment, is to the effect that the decedent came from Oelwein to the home of appellees on said farm, in April of 1920, and stayed about three weeks, at a time when there was sickness in appellees' family. It is claimed that during this time decedent asked payment of the amount due on said mortgage. This was approximately one year after the deed to the premises had been executed. The deed, however, had not been recorded, and was not recorded until the day following the release of said mortgage. The evidence in behalf of appellees is to the effect that at said time appellees paid to the decedent $6,000 in cash. No one denies this claim. It is only impeached by

circumstances. It must be confessed that the circumstances surrounding this alleged payment are not free from grave suspicion. Part of the testimony regarding it came from witnesses who were wholly incompetent to testify. The claim of appellees is that the father of appellee Louisa had at various times given her money in cash. It appears that the cash payment of $2,000 on the farm was furnished by the father of Louisa in the form of drafts, and it is the contention of appellees that at different times thereafter he brought various sums of money to Louisa in the form of bills, the total amount aggregating $6,000, and that Louisa buried the same on the farm. The evidence is that the money was being furnished by the father in this manner for the purpose of enabling appellees to buy a certain tract of land. There is, however, no proof of any attempt to buy the land. The contention of appellees is that, when the decedent asked for the payment of the mortgage, the money so buried was produced and counted out to the decedent by a daughter of appellees', who was a witness, and that decedent placed the same in a hand bag belonging to her. There is no evidence as to what she did with this money thereafter, if it was so paid to her. One witness testified to having seen her have a large roll of bills in her possession sometime after this transaction. After said date, the decedent worked for some time in a laundry. She had no bank account thereafter.

The evidence shows that, the day on which the release was executed, and after the claimed payment of the $6,000, the decedent and appellee Joseph went to the bank, and that the decedent turned over to Joseph two certificates of deposit, representing all the funds she had in the bank, and aggregating $1,800. Joseph also went with her to the courthouse when the mortgage was released, the same day. Appellant points out the inconsistency of appellees' paying the decedent $6,000 in cash and on the same day receiving from the decedent $1,800 in the form of certificates of deposit. The father of appellee Louisa, who, it is claimed, furnished the said sum of $6,000 in various installments, it appears from the record was a resident of the town of Sumner, Iowa, and at the time of the trial, was temporarily absent in Minnesota; and there was no attempt to produce him as a witness or to have his deposition taken.

If the case were to turn solely upon the question of the

establishment of the payment of the $6,000 in cash, as claimed by appellees, it is quite apparent that the circumstances surrounding it are by no means free from suspicion. But even if we should find that the circumstances surrounding the alleged payment are such as to warrant a finding that said claimed payment of $6,000 was not made, still this would not necessarily establish appellant's right to recover in this action. The burden was upon appellant to establish a want of consideration. The writing imported a consideration, and appellant offered no sufficient competent evidence to impeach the written instrument. It is true that appellees make no allegation that the release of said mortgage was a gift. But, as we have seen, there is no sufficient evidence in the record upon which to base any finding of mental incapacity on the part of the decedent, or of undue influence in procuring the execution of the release on the part of the decedent, or of a want of consideration. It is a significant fact that the release stood on a public record, wholly unimpeached, from May 3, 1920, until October, 1921. For more than a year after the execution of this release, the decedent continued to live in Oelwein, and there appear to have been no intimate relations between her and appellees. In June of 1921, the decedent went to the home of appellees. She remained until about August 21, 1921, when she went to the home of a brother of hers; and almost immediately thereafter, the petition for the appointment of a guardian was filed. She died October 12, 1921. About six weeks before her death, she lived at the home of another son, John. It appears that, after the decedent left the home of appellee Joseph, he did not call upon her, while she was staying at his brother John's. It also appears that there was bitter hostility between the two brothers.

Almost immediately after the mother left appellees' place, in August, 1921, appellee Joseph and his wife deeded to appellees' daughter the property in Oelwein which appellee had received from his mother, and also, on the same day, cashed the certificates of deposit which he had received from the decedent. There is evidence in the record tending to show that the decedent had expressed a wish that the Oelwein property should go to appellees' daughter. Appellant contends that these circumstances are evidences of a ''guilty conscience'' on the part

<div style="margin-note">2. MORTGAGES: release: consideration: presumption.</div>

of appellees, and of an endeavor to forestall an attack upon appellees' title to the property. These are not, however, sufficient circumstances, when taken in connection with the entire record in the case, to impeach the validity of the release of the mortgage. The fact that the decedent left no property except a few household goods of insignificant value, and that there are no funds from which to pay a few small creditors and the funeral expenses, and that appellee Joseph has not seen fit to pay the same, while it has a bearing upon the filial duty of appellee Joseph, and is a reflection of certain traits of character that are by no means creditable to him, still is not sufficient to form the basis of a judicial determination impeaching the validity of the release executed by the decedent, which was of record nearly a year and a half before her death.

We have not attempted in this opinion to set out in minute detail all of the items of evidence in this record. We have examined the abstract with great care. There is no sufficient showing to warrant a cancellation of said release and a reinstatement and re-establishment of said mortgage. Instruments of this character, executed by competent persons, especially when a matter of public record, cannot be set aside, upon suspicion of fraud, without adequate and satisfactory proof to impeach their validity. The record in this case is not such as to establish that the release was invalid, and the decree of the trial court in dismissing appellant's petition must be, and it is,—*Affirmed*.

EVANS, STEVENS, VERMILION, ALBERT, and MORLING, JJ., concur.