DONALDSON *v.* JOHNSON.

5-2727

359 S. W. 2d 810

Opinion delivered September 10, 1962.

NEILL BOHLINGER, Associate Justice. Clare M. Donaldson was the mother of the appellant, J. Earl Donaldson and Willie Johnson, an appellee herein, and the grandmother of Helen M. Johnson who is also an appellee.

Clara M. Donaldson was the owner of a home in Springdale, Arkansas and on January 17, 1958 she executed a deed conveying the homeplace to her granddaughter, Helen M. Johnson, subject to her life estate therein. The consideration recited was $1.00 and other valuable considerations.

At the time of the execution of this deed, Mrs. Donaldson was 81 years of age and was suffering from diabetes, arteriosclerosis, leukemia, secondary uremia and other diseases of old age. Nine days after execution of the deed in question Mrs. Donaldson died. Mrs. Donaldson had resided in her home in Springdale for many years and subsequent to her husband's death had been cared for by her son, Earl Donaldson, appellant, who lived in her home with her. Earl had also cared for her and her husband and had lived with them from time to time.

On January 16, 1958, Mrs. Donaldson's daughter, Willie Johnson, came to the Donaldson home and took Mrs. Donaldson to the Johnson home. The deed in question was executed by Mrs. Donaldson on January 17th in the office of a lawyer in Fayetteville.

After the death of his mother, appellant brought this suit to cancel the deed from Mrs. Donaldson to her granddaughter, Helen M. Johnson, and alleged that the appellees, Willie and Helen Johnson, exercised undue influence on Mrs. Donaldson to secure the deed and also that Mrs. Donaldson was incompetent to execute the deed.

Much testimony was offered both by doctors and laymen as to Mrs. Donaldson's mental capacity, the doctors and laymen all testifying that in their opinions, because of her diseases and old age, Mrs. Donaldson

did not have the competence to know the extent of her property and to realize the disposition she was making of it although they all testified that Mrs. Donaldson did have lucid intervals during which she was normal.

At the close of appellant's case in chief the chancellor sustained a demurrer as to the undue influence allegation. There was no testimony offered concerning undue influence and the fact that Mrs. Donaldson's daughter, Willie Johnson, took her mother to her home the day before the deed was executed might offer an opportunity for the exertion of influence but there is none shown to have taken place. The daughter, Mrs. Johnson, seems to have been an infrequent visitor to her mother's home and there is no testimony to support appellant's allegation of a confidential relationship between Mrs. Donaldson and her daughter or granddaughter which would give rise to a presumption of undue influence, duress or fraud which the appellee would be required to rebut. We conclude the chancellor was correct in sustaining the demurrer to the allegation of undue influence. The issue of confidential relationship and presumption of undue influence is covered well in an Iowa case, *Arndt* v. *Lapel,* 214 Iowa 594, 243 N. W. 605:

"What constitutes a confidential relationship has been recently passed upon by this court in *Utterback* v. *Hollingsworth,* 208 Iowa, 300, 225 N.W. 419. We quote the following, loc. cit. 302 of 208 Iowa, 225 N.W. 419, 421: 'Plaintiffs take their main position on the proposition that defendants sustained to decedent a confidential relationship such as to shift to them the burden of proof. It is not claimed, of course, that the relationship was fiduciary as a matter of law, but that it existed in fact within the doctrine of *Curtis* v. *Armagast,* 158 Iowa, 507, 138 N.W. 873; *Pruitt* v. *Gause,* 193 Iowa, 1354, 188 N.W. 798; 2 Pon. Eq. (4th Ed.) § 956. This doctrine for the purpose of the matter now under discussion may be stated to be that one who in fact stands in a confidential relationship to another may not retain advantage of a transaction with the *cestui que* trust which may reason-

ably be the result of the confidence reposed, unless he shows that the *cestui* acted with freedom, intelligence, and with full knowledge of all the facts. The purpose of the doctrine is to defeat and correct betrayals of trust and abuses of confidence. It is a prerequisite to the application of the doctrine that faith and confidence be reposed; that the repository shall be thereby in a position of superiority or dominance, while the *cestui* is in a corresponding position of inferiority or subservience. * * * Before the doctrine can be applied, however, the existence of the confidential relationship or of the facts giving rise to it must be proved. The relationship must be such as to enable the one charged with having abused it, to have exercised it to his advantage. It must appear expressly or by implication that trust or confidence was reposed. The supposed trustee must be shown to have been in a position of advantage or superiority such as to imply a dominating influence over the *cestui*.' (citations omitted)

* * * * *

As was said in *McNeer* v. *Beck,* 205 Iowa, 196, loc. cit. 198, 217 N.W. 825, 826: 'Mere blood relationship does not of itself create the legal trust or confidential relationship and change the requirement in the above regard. *Krcmar* v. *Krcmar,* 202 Iowa, 1166, 211 N.W. 699; *Shaffer* v. *Zubrod,* 202 Iowa, 1062, 208 N.W. 294.' "

The mere proof of kinship alone does not give rise to a confidential relationship. *Cunningham* v. *Lockett,* 216 Miss. 879, 63 So. 2d 401; *Arndt* v. *Lapel,* 214 Iowa 594, 243 N.W. 605; 26 C.J.S. § 64a, p. 774.

There is no set formula by which the existence of a confidential relationship may be determined, for each case is factually different and involves different individuals. As was said in *Gillespie* v. *Holland,* 40 Ark. 28, 48 Am. Rep. 1:

* * * * *

"* * * (confidential relationships) are supposed to arise wherever there is a relation of dependence or confidence; especially that most unquestioning of all con-

fidences which springs from affection on one side, and a trust in a reciprocal affection on the other. *The cases for the application of the doctrine can not be scheduled. They pervade all social and domestic life.''* [Emphasis added]

The second allegation on which a reversal is prayed is that the preponderance of the evidence showed Mrs. Donaldson was incompetent at the time the deed was executed. The appellant offered the testimony of several of Mrs. Donaldson's neighbors and Mrs. Donaldson's doctors that she was mentally incompetent to execute the deed. The doctors, one of whom had been treating Mrs. Donaldson for about two years, testified that in their opinion, because of her diseases and advanced age, she did not have the competency to know the extent of her property and the disposition that she was making of it. They all testified, however, that Mrs. Donaldson did have lucid intervals.

The test of mental competency to execute a deed is found in *Petree* v. *Petree,* 211 Ark. 654, 201 S.W. 2d 1009, where we quoted *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S.W. 510, as the applicable rule in cases of this kind.

''If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting *his own interest in dealing with another* is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress, or undue influence, mental weakness, whether produced by old age or through physical infirmities, will not invalidate an instrument executed by him. *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590; *Seawel* v. *Dirst,* 70 Ark. 166, 66 S. W. 1058; *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405; *McEvoy* v. *Tucker,* 115 Ark. 430, 171 S. W. 888.'' [Emphasis added]

The *Pledger* case was also quoted approvingly in *Hunt* v. *Jones,* 228 Ark. 544, 309 S.W. 2d 22.

Even the doctors who testified that Mrs. Donaldson was mentally incompetent agreed that she could have lucid intervals. Since it is shown that Mrs. Donaldson had periods in which she was normal, it becomes a question as to her mental condition at the time the deed was executed. It is not a question as to mental condition before or on the afternoon of the day on which she executed the deed, but in the morning at the time the deed was signed did she have the capacity that is demanded by the authority quoted above.

There were but two witnesses that testified as to Mrs. Donaldson's mental capacity the day she executed the deed. Taking the testimony of these witnesses in the order in which they were presented to the trial court and not the sequence of events, there was the testimony of Mrs. George Been, a next door neighbor to Mrs. Donaldson who had observed Mrs. Donaldson for many years and had noted a mental decline ever since the death of Mrs. Donaldson's husband and who talked to Mrs. Donaldson on the evening of January 17th after the deed in question had been executed the morning of that day. Mrs. Been stated that Mrs. Donaldson's mental and physical conditions were poor; that she wasn't able to understand and could not carry on a conversation; that she had known Mrs. Donaldson for more than fifty years and that she and Mrs. Donaldson had many mutual friends and she enjoyed her conversations with her but there were times when Mrs. Donaldson's mind did wander but there were times when she would be perfectly all right.

The only other witness in connection with Mrs. Donaldson's mental condition at the time she executed the deed was the attorney who prepared the deed. He testified that Mrs. Donaldson had sought to make an appointment with him some weeks prior to the time the deed was executed and he was unable to see her on that oc-

casion but did arrange to see her on the 17th of January, 1958, and that on the second occasion when she called him she stated that she wished to draw a deed. He saw her in the morning of January 17, 1958, at his office and there was no one in his private consultation room except he and Mrs. Donaldson. He did not know how she reached his office.

While part of this witnesses' testimony is open to objection, his testimony is competent and relevant as to his observations on her mental condition. It appears from this testimony that Mrs. Donaldson was 81 years of age and the attorney said she was in his office for more than an hour and he enjoyed the conversation he had with her.

After the attorney's secretary had gone to prepare the deed in question he and Mrs. Donaldson talked about the infirmities of age and she told him that she had her good days and some bad days but on this particular day she felt good. They discussed how things had progressed, about old relationships, and she told him about the store she and her husband once had. The attorney found that she was coherent, well oriented and knew exactly what she wanted and was quite lively to talk with. Mrs. Donaldson stated to the attorney that the grantee in the deed was her only grandchild and that she and her husband had wanted to give her something and she wanted to do it in a way that would be impervious to attack after her death.

Based on his experiences with Mrs. Donaldson and his conversation with her, the attorney was in a position to give an opinion as to her mental capacity on that day at the time the deed was executed. From her ability without prompting to remember the nature and extent of her property; to know what she was doing with it and who was the natural recipient of her bounty, the attorney formed an opinion that she was totally and completely competent and the deed was executed in his presence. There is no testimony that Mrs. Donaldson was incompetent at the time the deed was executed.

These matters might well have presented themselves to the consideration of the learned chancellor. One of the tests set forth in *Petree* v. *Petree,* 211 Ark. 654, cited *supra,* was the grantor's ability to protect his own interest in dealing with another. In this case we find that Mrs. Donaldson provided for herself—fully protected her interest—by reserving a life estate in the property.

There is before us a photostatic reproduction of the deed in question showing the signature of Clara M. Donaldson which the chancellor had the opportunity to observe. The signature of Clara M. Donaldson on the deed is in a firm, clear hand. It has none of the waverings in the letters or lines that we might expect to be present in a person mentally and physically distressed at the time of the signing but is a clear, bold signature that bespeaks neither uncertainty or fear and is a mute witness but eloquent testimony which tends to sustain the testimony of the attorney that she was fully competent.

The proof before the chancellor fails to show undue influence or lack of mental capacity at the time the deed was executed. The chancellor so found and the decree in this cause is accordingly affirmed.

JOHNSON, J., dissents.