RICHARD *v.* SMITH.

5-2834

361 S. W. 2d 741

Opinion delivered November 19, 1962.

*R. H. Peace,* for appellant.

*William I. Prewett,* for appellee.

NEILL BOHLINGER, Associate Justice. The appellant, Levi Richard, was the owner of forty (40) acres of land in Union County, Arkansas and on June 20, 1960, he conveyed the forty (40) acres by warranty deed to the appellee, Walter J. Smith, for a consideration of $2,000.00 which was paid him.

The appellant had two sons, the elder, Roy J. Richard, lived in California and the younger, Elgie Lee Richard, resided at times with the appellant and at other times lived in Topeka, Kansas.

After the sale of the land by the appellant, he moved to the home of his sister who seems to have advised the older son in California of the sale and that son came to see his father and thereafter filed in the Union Chancery Court an action as next friend of Levi Richard in which he prayed the cancellation of the deed conveying the appellant's land to the appellee on the ground that at the time of the signing and delivery of the deed the appellant was "infirm and wholly incapable of attending to busi-

ness by virtue of his age and infirmities and being mentally incapable.''

The appellee duly answered and the issues being joined, proof was taken from which the chancellor found for the defendant, who is the appellee herein.

To sustain the issue for the appellant there was introduced the testimony of Dr. James H. Clark who stated that he had treated the appellant since January of 1953 and had treated him for a mental condition and had had the appellant in the hospital on June 9, 1960; that he had noted a steady deterioration in the mental and physical health of the appellant since he began treating him and that on June 20, 1960, he regarded the appellant as senile and it was the doctor's opinion that the appellant was incapable of knowing the value of anything or unable to transact business on the date of the deed. The doctor admitted that he was a *urologist* and not a *neurologist* but he did not regard the appellant as having a neurotic condition, but due to old age and long standing high blood pressure, he did not think the appellant's brain got the proper supply of blood.

The appellant's sister, Mollie Pearl Kilgore, testified that the appellant had lived with her from June of 1960 and that his mental condition was about the same as it had been for about a year prior to the sale of the land and his physical condition was not good; that he had trouble dressing himself and she had trouble getting him to talk; that one time he had gone to the woods and stayed out there all night; that sometimes his memory was poor and at other times not so poor; that the appellant had told her that he did not sell his place but had leased it for $1,600.00.

Appellant's son, Roy J. Richard, testified that he came to El Dorado some few hours after his father had deeded the property to the appellee; that his father could not dress himself as he was 'mindless'; that he would talk good for a while and then his mind would wander off; that he had been in that condition for about three

years and was in that condition at the time he deeded the land to the appellee.

Witnesses for the defendant below, appellee here, comprised people who had known the appellant for many years and, for the most part, resided in that community. They had had business dealings with him and he had at times worked for some of them and they had performed services for him and these witnesses testified that they had observed no change in appellant through the years except that he was growing older. It appears from the testimony that he was capable of buying his groceries and supplying his own needs and there is nothing in the testimony of his neighbors which would indicate that he was incompetent.

There was recently before us the case of *Donaldson* v. *Johnson,* 235 Ark. 348, 359 S. W. 2d 810, [September 10, 1962] which involved a woman of advanced age who suffered from diabetes and other disorders and would have intervals in which she was mentally unstable but at other times was perfectly competent. She deeded her home to her granddaughter and in that case we said:

"The test of mental competency to execute a deed is found in *Petree* v. *Petree,* 211 Ark. 654, 201 S. W. 2d 1009, where we quoted *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S. W. 510, as the applicable rule in cases of this kind.

'If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting *his own interest in dealing with another* is all the law requires. If a person has such mental capacity then, in the absence of fraud, duress, or undue influence, mental weakness, whether produced by old age or through physical infirmities, will not invalidate an instrument executed by him. *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590;

*Seawel* v. *Dirst,* 70 Ark. 166, 66 S. W. 1058; *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405; *McEvoy* v. *Tucker,* 115 Ark. 430, 171 S. W. 888.' [Emphasis added]

The *Pledger* case was also quoted approvingly in *Hunt* v. *Jones,* 228 Ark. 544, 309 S. W. 2d 22.

Even the doctors who testified that Mrs. Donaldson was mentally incompetent agreed that she could have lucid intervals. Since it is shown that Mrs. Donaldson had periods in which she was normal, it becomes a question as to her mental condition at the time the deed was executed. It is not a question as to mental condition before or on the afternoon of the day on which she executed the deed, but in the morning at the time the deed was signed did she have the capacity that is demanded by the authority quoted above.''

The above case is especially applicable to the case at bar. It is not a question as to his mental condition before or after the signing, but at the time he alienated his land and as to that time there are two witnesses, the appellee and the municipal clerk and notary who prepared the deed. The appellee states that the son, Elgie Richard, and the appellant, Levi Richard, came to his house in regard to selling the land in controversy; that the appellant did the talking and said he wished to sell his property as his son was preparing to leave and he wanted to give him some money which he didn't have and he wasn't getting enough money to live on and pay his doctor bill. The other witness was Annie Lee who was a municipal clerk and notary public who testified that she made the deed at the request of the appellant who gave her a description of the land without prompting or reference to any memorandum; that she prepared a check for his payment and delivered it to him in her office and that she thought, according to the way most people act, that appellant was particularly competent and she commendably states that had she thought him incompetent, she would not have taken the acknowledgment.

The appellee further testified that he had endeavored to buy the land for less than the $2,000.00 re-

quested by appellant, but the appellant was adamant and the appellee finally paid the price asked.

We think this clause from the above cited decision is pertinent here:

" 'If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. * * * , "

The appellant met all of these requirements.

The appellant's son, Roy J. Richard, raised the question of inadequacy of price and stated that he valued the property at $4,000.00 plus the value of the buildings, although he does not give any facts on which he bases his idea of value. Nor does it appear that he owned, had bought or sold land in the vicinity of his father's land. The only comparable sale that is presented is the purchase from another of a piece of land adjoining the land here involved for which the appellee paid only $35.00 an acre. Another witness, without giving comparable sales, valued the land at $75.00 an acre if the minerals were included. Part of the minerals had been disposed of and we are unable to gather from that testimony any firm basis of value. Another witness who lived about two (2) miles from the property testified that he had sought to buy land adjoining his own for $100.00 an acre but there is nothing in the record to indicate whether or not that land was comparable to the land here involved.

The chancellor therefore concluded that at the time the appellant sold his land he had the mental capacity to protect his interest and to know what he was selling and it seems to us from this record that some of the idiosyncrasies noted by the appellant's witnesses are but concomitant of advancing years. The testimony of those who were with him at the time the transaction was consummated negates the basis of raising the red flag of

fraud. The proof is conclusive that the appellant knew what he was selling and what he was to get. He gave part of his money to his younger son and put the rest in the bank to his own credit.

The chancellor refused to void the transaction and in that he was correct and the decree is here and now affirmed.