BOYCE E. GROSS & DELORIS GROSS *v.* W. S. YOUNG

5-4233                                    414 S. W. 2d 624

Opinion delivered May 15, 1967

[Rehearing denied June 5, 1967.]

*Mobley & Bullock,* for appellants.

*Richard M. Priddy* and *John G. Rye,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellants, husband and wife, seek to reverse a decree of the chancery court cancelling a deed by which appellee, grandfather of one of appellants, conveyed certain lands to them reserving a life estate.

The deed was executed by appellee on June 14, 1963. Suit for cancellation was filed March 23, 1966. Appellee alleged in his unverified complaint that he went to the home of his grandson, Boyce Gross, to live about May 9, 1963, and that he made arrangements with Gross whereby he would convey the property to the latter if Gross would furnish a home to him as long as the former lived. He further alleged that he executed and delivered the deed in order to carry out this agreement and that the consideration was the agreement on the part of the grandson and his wife to furnish him a home. Although appellee stated that he was 92 years of age at the time of filing the complaint, there are no allegations of mental incapacity or undue influence. The only basis alleged for cancellation was that on September 19, 1964 Gross told appellee, with an oath, to take his trunk and leave. Appellee claimed that this conduct amounted to fraud and failure of consideration. Appellants, in their answer, admitted the execution and delivery of the deed but denied all other allegations of the complaint. After hearing all the evidence, the chancellor announced his holding that, considering the advanced age of appellee at the

time of the transaction, the relationship of the parties, and testimony to prior deeds, the deed would have to be cancelled without regard to whether the agreement was made or not. Decree, from which this appeal is taken, was accordingly entered. In this finding and action we find reversible error.

While the chancellor did not find there was any agreement between the parties, appellee's testimony completely negated the allegations of the complaint.

Appellee had five children, two boys and three girls, only three of whom were living at the time he testified. The mother of Boyce Gross was one of these children. She died when Boyce was two or three weeks old and appellee and his wife brought him to their home and raised him. None of the other four children were ever married. The three living children all resided at appellee's old home place. Although appellee claimed to be a resident of Pope County, he had worked in southeast Arkansas after 1937, coming back in 1955 and staying six years. Thereafter, he went back to southeast Arkansas but returned to Pope County in 1963. He visited frequently in his grandson's home during all these years, staying as long as a week. He testified that he was fond of his only grandchild, loved him and had confidence in his integrity. He went to the home of this grandson to live on May 9, 1963. He said that Boyce was just about like his own child. Appellee rode with Gross to the latter's work one day and, on the way, told Gross that he was not going back anymore but would get a place in Pope County. Gross then said that appellee could live with him as long as he wanted to. On a later date appellee walked alone to the office of a lawyer for the purpose of talking about making a will. Later he went back and the lawyer, now deceased, prepared a deed to appellants. He said that Gross had been with him on this trip but had gone back to his work before the deed was written. Appellee took the deed home and gave it to Gross. Thereafter, Gross thought

there was something wrong with this deed in that it did not describe a four-acre tract properly. Boyce Gross had Mr. Charles Gardner, a Russellville attorney, look it over and appellee went to this lawyer's office a few days later and signed new deeds, one to appellants and one to his son, John Young. Both deeds recited that the consideration was $1.00 and other good and valuable considerations paid. Appellee said that he just gave his son part of his land and appellants part of it.

Appellee did not say anything to Gross about giving him any land and did not talk to either of appellants about giving them land until the first deed had been made. On cross-examination appellee gave this explanation for deeding the land to his grandson:

"Q. Now you never did—let me rephrase that question. Mr. Young, you never did have a discussion with Mr. Boyce Gross and Deloris Gross that they agreed to take care of you if you agreed to convey this property did they? They never did make such an agreement as that did they?

A. No, sir.

Q. You just thought you'd give it to them?

A. Boyce said I could stay with him as long as I wanted to and I was giving him the property to satisfy him. That was paying him for keeping me.

Q. All right, sir, and you also might have given it to him as a gift because you liked him, is that right?

A. No, I'd done give him all I could stand to give him. I give him the property to make it safe so he could get his pay for keeping me.

Q. Well sir, he never did ask you to give him anything for payment for keeping you did he?

A. No, sir."

Appellee testified that he had made other substantial gifts to appellants[1], both before and after the making of the deed.

On behalf of appellants Mr. Gardner testified that Mr. Young told him that he had the original deeds prepared because he was personally fond of Gross and that his sons had been living on his property for many years and taking the income but that Gross had not participated. Appellee expressed a desire to Gardner to take care of Gross and John Young, whom he considered to be a favorite son. While the testimony is not clear as to the content of the original deeds which were probably destroyed, Gardner said there was an error in one or both of them[2]. He also said that he recommended to appellee that a life estate be reserved in these deeds. He further said that he told appellee he would not have him execute the deeds on the first day he came to the office nor would he permit him to sign them if either Boyce Gross or John Young were present, but if appellee wanted him to prepare the deeds, he could come back sometime by himself. He testified that appellee appeared the next day, apparently by himself, and executed the deeds.

Appellee does not agree with Gardner's version of the preparation of these deeds. He testified that he gave Gross the original deeds[3] and never saw them again.

---

[1] Appellee testified that these gifts of a value of over $2,000.00 were "not much".

[2] The error pertained to the description of a four-acre tract.

[3] While the originals were not available and no one testified as to their content, the inference is strong that Mr. Young had deeds to both Boyce Gross and John Young prepared by the first lawyer he saw.

He said Gross had Gardner prepare the new deeds and then took him down to sign them. He denied having any conversation with Gardner about the deeds and said that Gardner just showed him where to sign. He did not read them, thinking they would be copies of the original deeds.

It is true that where a deed is executed in consideration of an agreement by a grantee to support the grantor and this agreement is made by the grantee for the fraudulent purpose of securing the deed and without the intention to carry it out, the deed will be set aside in equity for fraud. *Hendrix* v. *Thomas*, 235 Ark. 791, 362 S. W. 2d 22. It is also true that this court is committed to the doctrine that a grantor may, in equity, have a deed rescinded and the title reinvested in him whenever he has conveyed land to a grantee in consideration of an agreement by the grantee to support, maintain and care for the grantor during the remainder of his natural life and the grantee neglects or refuses to comply with the contract. *Hendrix* v. *Thomas, supra.* In this case, however, there is no evidence to show there was any such agreement. The testimony of the grantor positively negates this. His acts were motivated by the love and affection he had for that grandson whom he had raised as if he were his own child, and gratitude for the offer of a home for his declining years. Natural love and affection has always been held to be sufficient consideration for a deed where the relationship of the parties is such as to justify the presumption that love and affection exist. *Faulkner* v. *Byland*, 201 Ark. 1185, 147 S. W. 2d 37. No matter how much the grandfather's confidence may have been misplaced, no matter how reprehensible we may think the subsequent conduct of the grandson to be, the making and delivery of the deed by appellee was a purely voluntary act on his part and the vesting of title was complete upon delivery of the deed. *Ferguson*

v. *Haynes,* 224 Ark. 342, 273 S. W. 2d 23.

It is not clear to us on just what grounds the chancellor cancelled this deed. His reference to the age of the grantor, the relationship of the parties and their dealings might lead to the conclusion that he felt that the deed was procured through undue influence of Boyce Gross over his grandfather. He may have meant to indicate some degree of mental incompetency. Not only was there no allegation of mental incompetency in the pleadings, but there is a total failure of proof in that regard. What this court said in *Richard* v. *Smith,* 235 Ark. 752, 361 S. W. 2d 741, is appropriate here:

"There was recently before us the case of *Donaldson* v. *Johnson,* 235 Ark. 348, 359 S. W. 2d 810, which involved a woman of advanced age who suffered from diabetes and other disorders and would have intervals in which she was mentally unstable but at other times was perfectly competent. She deeded her home to her granddaughter and in that case we said:

'The test of mental competency to execute a deed is found in *Petree* v. *Petree,* 211 Ark. 654, 201 S. W. 2d 1009, where we quoted *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S. W. 510, as the applicable rule in cases of this kind.

"If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory without prompting the extent and condition of his property and to comprehend how he is disposing of it and to whom and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting *his own interest in dealing with another* is all the law requires. If a person has such mental capacity, then, in the absence of fraud, du-

ress, or undue influence, mental weakness, whether produced by old age or through physical infirmities, will not invalidate an instrument executed by him. *McCulloch* v. *Campbell*, 49 Ark. 367, 5 S. W. 590; *Seawel* v. *Dirst*, 70 Ark. 166, 66 S. W. 1058; *Taylor* v. *McClintock*, 87 Ark. 243, 112 S. W. 405; *McEvoy* v. *Tucker*, 115 Ark. 430, 171 S. W. 888." [Emphasis added]' "

It is crystal clear that appellee met this test. The trial judge, in stating that he would permit some leading by counsel in examing appellee because of his advanced age, commented that his memory was very good as to these events. Appellee's testimony clearly demonstrates his mental capacity.

There is also a total failure of allegation or proof of undue influence. Notwithstanding the confidence of appellee in Boyce Gross, the former's own testimony shows that there was no effort on the part of Gross to influence the old gentleman in any respect. Mr. Young acted as a free agent in disposing of his property. Obviously, his greatest affection was directed toward his only grandson and one of his sons, to both of whom he deeded property. He also seemed to have felt that there had been some discrimination against his grandson, in that the latter had not shared in the income from the home place as had Mr. Young's children.

In *Boggianna* v. *Anderson*, 78 Ark. 420, 94 S. W. 51, this court said:

"*** It is not sufficient that the grantor or testator was influenced by the beneficiary in the ordinary affairs of life, or that he was in close touch and upon confidential terms with him; but there must be a malign influence resulting from fear, coercion, or any other cause which deprives the grantor or testator of his free agency in disposing of his property.

*McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590.''

We find no evidence to meet this test.

Reversed and dismissed.