Donald A. REED et ux *v.* Cushman S. RADEBAUGH et ux

CA 82-329                                         648 S.W.2d 816

Court of Appeals of Arkansas
Opinion delivered March 30, 1983

*Young, Patton & Folsom,* by: *David Folsom,* for appellants.

*Ed Alford,* for appellees.

TOM GLAZE, Judge. This appeal arises from a specific performance action in which Mr. & Mrs. Radebaugh, the appellees, sued Mr. & Mrs. Reed, appellants, to force them to carry out the provisions of a Lease with Option to Purchase executed by the parties on April 22, 1976, involving thirty-five acres of farmland. Mr. Reed raised the affirmative defense below that he was not mentally competent to contract at the time he signed the lease/option agreement. He also counterclaimed, seeking to cancel a deed to 408 acres of property which he had conveyed to appellee. Again Mr. Reed claimed he lacked mental capacity to execute the deed which he signed on February 5, 1977. The chancellor found that Mr. Reed was competent at all times relevant to the transactions in question; accordingly, he granted a decree of specific performance in favor of the Radebaughs and dismissed the Reeds' counterclaim. Appellants' only issue on appeal is that the chancellor's finding that Mr. Reed was mentally competent was clearly against the preponderance of the evidence.

The test of mental capacity necessary to execute a deed is well-established in Arkansas. *Andres* v. *Andres,* 1 Ark. App. 75, 613 S.W.2d 404 (1981); *Richard* v. *Smith,* 235 Ark. 752, 361 S.W.2d 741 (1962); *Donaldson* v. *Johnson,* 235 Ark. 348, 359 S.W.2d 810 (1962). In *Donaldson,* the Court stated the rule as follows:

The test of mental competency to execute a deed is found in *Petree* v. *Petree,* 211 Ark. 654, 201 S.W.2d 1009, where we quoted *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S.W. 510, as the applicable rule in cases of this kind.

"If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental capacity to exercise a reasonable judgment concerning these matters in protecting his own interest in dealing with another is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress, or undue influence, mental weakness, whether produced by old age or through physical infirmities, will not invalidate an instrument executed by him. *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S.W. 590; *Seawel* v. *Dirst,* 70 Ark. 166, 66 S.W. 1058; *Taylor* v. *McClintock,* 87 Ark. 243, 112 S.W. 405; *McEvoy* v. *Tucker,* 115 Ark. 430, 171 S.W. 888."

235 Ark. at 352, 359 S.W.2d at 813. *See also Richard* v. *Smith,* 235 Ark. at 754, 361 S.W.2d at 743.

The Court in *Donaldson* pointed out that the doctors who testified that Mrs. Donaldson was incompetent also testified that she could have lucid intervals. The Court concluded that the question was her mental condition at the time the deed was executed; explaining further, it added:

It is not a question as to mental condition before or on the afternoon of the day on which she executed the deed, but in the morning at the time the deed was signed did she have the capacity that is demanded by the authority quoted above.

*Donaldson,* 235 Ark. at 353, 359 S.W.2d at 813.

In the instant case, appellants rely heavily on opinion testimony given by two psychiatrists, Doctors Joe Backus and I. L. Carlton. Carlton's unswerving opinion was that

Mr. Reed's mental capacity was impaired when he signed the lease on April 22, 1976, and although Carlton had not seen Reed after May 6, 1976, the doctor would not have expected Reed's condition to reverse itself. Dr. Backus, however, agreed that even though he believed Reed was mentally incompetent when he signed the questioned documents, the doctor believed there were times when Reed was competent to function in the outside world and in business deals. Backus said, "I believe it probable that there were times when he was competent. I am unable to say, without having actually observed him, whether he was competent or incompetent on any given day."

As we noted in *Andres* v. *Andres, supra,* the testimony of psychiatrists is not conclusive but instead must be considered with all other evidence bearing on the issue. We consider such other evidence not only in light of the test of mental competency set out in *Donaldson* v. *Johnson,* but also in view of the presumption of law that every man is sane, fully competent and capable of understanding the nature and effect of his contracts. *Harris* v. *Harris,* 236 Ark. 676, 370 S.W.2d 121 (1963).

The Radebaughs testified that Mr. Reed appeared "sharp" and a willing participant in the lease and deed transactions. Leonard Stewart agreed with the Radebaughs' observations of Reed. Stewart testified that he offered Reed $350 per acre for the same 408 acres the Radebaughs purchased, but Reed rejected the offer because the Radebaughs offered more money. Stewart said that Reed appeared competent and sharp enough that he made some extra money on the sale of the property. Stewart also revealed that Reed was concerned over his income tax liability relative to the sale and sought advice from a Mr. Castleberry on the subject. Another would-be purchaser, Wayne Bissell, had offered Reed $325 per acre for the 408 acre tract a few days before his negotiations with Stewart and the Radebaughs. Bissell said that during this time Reed was "very competent," "sharp as a tack" and that he showed Bissell all the corners of the property.

Even Mr. Reed's testimony did not vary in essential part from that given by Mr. Radebaugh. Reed recalled that he had contacted Radebaugh to see if he was interested in purchasing the subject property. Reed testified that he knew the extent and condition of his property, *i.e.*, he knew the number of acres, type of land and he personally showed the land to the Radebaughs. Reed's negotiations with Radebaugh resulted in his selling the property for $415 per acre —$65 to $90 per acre more than offered by Stewart and Bissell.

In our *de novo* review, we are aware of the testimonies by other witnesses who opined that Reed was incompetent at the times he executed the lease and deed. Nevertheless, this court cannot reverse the chancellor's findings unless they are clearly against a preponderance of the evidence. Here, the evidence bearing on Mr. Reed's mental capacity was in great conflict and the credibility of the witnesses was a critical issue to be resolved before the court could reach a decision on the competency issue. In such cases we defer to the superior position of the chancellor. *Andres* v. *Andres, supra.* In doing so, we believe the evidence was sufficient to warrant the chancellor's finding that Reed had the required mental capacity when he executed the lease and deed.

Affirmed.